UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALISSA FREDRICKS,

                                :

                Plaintiff,       :     Civil Action

                                :     No. 19-10331-RGS

        v.

                                :

MARKEL CATCO INVESTMENT
MANAGEMENT LTD AND MARKEL      :
CORP.,

                                :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

David E. Schwartz
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
david.schwartz@skadden.com

James R. Carroll
Christopher A. Lisy
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts  02116
(617) 573-4800
james.carroll@skadden.com
chistopher.lisy@skadden.com


Counsel for Defendants
Markel CATCo Investment Management Ltd
and Markel Corporation

Dated:  April 29, 2019

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND.....................................................................2

    1.     Fredricks Began Working For MCIM And Soon Relocated To Bermuda .............2

    2.     Fredricks's Employment Agreement
         Contains A *Mandatory* Bermuda Forum Selection Clause....................3

    3.     Fredricks And MCIM Executed An Addendum To
         Fredricks's Employment Agreement, Which Also Contains
         A Mandatory Bermuda Forum Selection Clause, And Leaves
         Other Provisions Of Fredricks's Employment Agreement Unchanged ..................4

    4.     Fredricks's Employment From MCIM Is Terminated
         "For Cause" Under The Employment Agreement, And
         Fredricks Commences This Action Challenging That Decision............................5

LEGAL STANDARD.................................................................................6

ARGUMENT ............................................................................................7

I.     THE EMPLOYMENT AGREEMENT'S FORUM SELECTION CLAUSE
      IS VALID, ENFORCEABLE, AND APPLIES TO FREDRICKS'S CLAIMS .................7

    A.    Fredricks's Contract Claims Fall Within The Scope Of
        The Employment Agreement's Mandatory Forum Selection Clause......................7

    B.    The Employment Agreement's
        Mandatory Forum Selection Clause Is Enforceable ...............................9

        1.    The Forum Selection Clause Is Enforceable Under Federal Law.............10

        2.    The Forum Selection Clause Is Enforceable Under Bermuda Law ..........12

    C.    As A Result Of The Mandatory Forum
        Selection Clause, The Court Should Dismiss This Case
        On *Forum Non Conveniens* Grounds In Favor Of A Bermuda Action ................13

        1.    Fredricks's Contract-Related Claims
           Should Be Dismissed Under The Modified
           *Forum Non Conveniens* Analysis In Favor Or A Bermuda Action ..........13

i

       2.       Consistent With Judicial Economy, Fredricks's Remaining Claims
Should Likewise Be Dismissed In Favor Or A Bermuda Action ..............15

   D.     The Addendum Also Contains A Mandatory Forum
Selection Clause And Likewise Compels The Dismissal Of This Action............17

II.   Even If The Court Did Not Credit The Employment Agreement's
Mandatory Forum Selection Clause, This Case Should Nevertheless Be
Dismissed On *Forum Non Conveniens* Grounds In Favor Of A Bermuda Action...........19

CONCLUSION.........................................................................................................................22

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

Athene Holding Ltd v Siddiqui et al,
     [2019] SC (Bda) 3 Com ........................................................................12, 13

Atlantic Marine Construction Co., Inc. v. U.S. District Court for Western District of Texas,
     571 U.S. 49 (2013) ......................................................................13, 20, 22

Bremen v. Zapata Off-Shore Co.,
     407 U.S. 1 (1972) ................................................................................10

Cape Ventures SAC Ltd v CC Private Equity Partners Ltd,
     [2009] Bda LR 54 .................................................................................12

Cromer Finance Ltd. v. Berger,
     158 F. Supp. 2d 347 (S.D.N.Y. 2001) ........................................................14

Deese-Laurent v. Real Liquidity, Inc.,
     305 F. Supp. 3d 280 (D. Mass. 2018) .........................................................9

EMC Corp. v. Petter,
     104 F. Supp. 3d 127 (D. Mass 2015) .........................................................11

Fiona Trust & Holding Corp v Privalov,
     [2007] UKHL 40 .................................................................................16

Get In Shape Franchise, Inc. v. Caldwell,
     Civ. A. No. 15-13118-NMG,
     2016 WL 11002219 (D. Mass. Feb. 18, 2016) ...........................11, 13, 16, 19

Gulf Oil Corp. v. Gilbert,
     330 U.S. 501 (1947), superseded by statute on other grounds
     recognized in American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994)..............15

Howe v. Goldcorp Investments, Ltd.,
     946 F.2d 944 (1st Cir. 1991) .................................................................21

Huffington v. T.C. Group, LLC,
     637 F.3d 18 (1st Cir. 2011) .............................................................8, 10, 11

Imamura v. General Electrical Co.,
     Civ. A. No. 17-cv-12278-PBS, 2019 WL 1513454 (D. Mass. Apr. 8, 2019)..............20, 21

In re Mercurio,
     402 F.3d 62 (1st Cir. 2005) .................................................................11

**<u>CASES</u>**                                                                                  **<u>PAGE(S)</u>**

Interface Partners International Ltd. v. Hananel,
     575 F.3d 97 (1st Cir. 2009) ........................................................................14, 21

Kelley v. Schlumberger Technology Corp.,
     Civ. A. No. 85-4794-Z, 1987 WL 9908 (D. Mass. Apr. 13, 1987) ...................................20

Kingate Global Fund Limited et al v Kingate Management Ltd et a,
     [2015] SC Bda 65 Com ........................................................................................17

Kurra v. Synergy Computer Solutions, Inc.,
     Civ. A. No. 15-cv-13952-ADB, 2016 WL 5109132 (D. Mass. Sept. 19, 2016) ..............10

Lambert v. Kysar,
     983 F.2d 1110 (1st Cir. 1993) ...............................................................................16

LVAR, L.P. v. Bermuda Commercial Bank Ltd.,
     No. 13-cv-9148, 2015 WL 1267368 (S.D.N.Y. Mar. 18, 2015),
     aff'd, 649 F. App'x 25 (2d Cir. 2016) ....................................................................14

McKee v. Cosby,
     236 F. Supp. 3d 427 (D. Mass. 2017)
     aff'd, 874 F.3d 54 (1st Cir. 2017).........................................................................20

Piper Aircraft Co. v. Reyno,
     454 U.S. 235 (1981).......................................................................................14, 22

Pittman v. Zoar Outdoor Adventure Resort, Inc.,
     Civ A. No. 16-30182-MGM, 2017 WL 2962891 (D. Mass. June 9, 2017).........................7

Provanzano v. Parker View Farm, Inc.,
     827 F. Supp. 2d 53 (D. Mass. 2011) ...................................................................9, 16

Re A Trust,
     [2012] SC Bda 72 Civ ........................................................................................18

Re Sigma Finance Corporation,
     [2009] UKSC 2 .................................................................................................17

Rivera v. Centro Medico de Turabo, Inc.,
     575 F.3d 10 (1st Cir. 2009)........................................................................6, 9, 16, 17

Sebastian Holdings Inc v Deutsche Bank,
     [2011] 1 Lloyd's Rep 106 ....................................................................................18

**CASES**                                          **PAGE(S)**

Snofrost AB v. Hakansson,
    353 F. Supp. 3d 99 (D. Mass. 2018) .........................................................................20, 22

Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,
    524 F.3d 315 (1st Cir. 2008) .............................................................................................6


**RULES AND STATUTES**                         **PAGE(S)**

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 7

Mass. Gen. L. Ch. 93A .........................................................................................6, 9, 16

## PRELIMINARY STATEMENT

This case involves an alleged breach of contract and other conduct by a Bermuda entity (and its parent, a Virginia entity) that occurred in Bermuda and purportedly harmed a then-Bermuda resident.  The contract is governed by Bermuda law and there is an exclusive Bermuda forum selection clause.  The Amended Complaint ("Complaint" or "Compl." (ECF No. 13)) makes plain that this case has virtually no connection at all to Massachusetts, and the case should be dismissed in favor of a Bermuda action (a result that was contemplated and contracted to by the parties).

Until very recently, when her employment was terminated for cause, the plaintiff, Alissa Fredricks, lived and worked full-time in Bermuda as an executive for Bermuda-based Markel CATCo Investment Management Ltd ("MCIM").  MCIM is an indirect, wholly-owned subsidiary of Virginia-based Markel Corporation ("Markel," together with MCIM, "the Defendants").  In late January 2019 -- after MCIM learned that Ms. Fredricks was engaging in a secret affair with another senior officer of MCIM -- Fredricks was terminated from MCIM "for Cause" under the terms of her Employment Agreement.  She then (apparently) moved to Boston and filed this lawsuit challenging that termination and alleging other misconduct that occurred overseas.

Fredricks's Employment Agreement with MCIM, out of which the claims in this case arise, states that it "shall be governed by and construed in accordance with Bermuda Law and the parties subject to the exclusive jurisdiction of the Bermuda Courts."  Perhaps because of her desire for a Massachusetts forum, Fredricks omitted to attach her Employment Agreement to her Complaint (although that agreement is incorporated by reference in the Complaint).  Indeed, Fredricks purports to allege that her claims do not arise out of her Employment Agreement at all, instead alleging that her claims arise solely out of an "Addendum" to her Employment

Agreement. That is incorrect for multiple reasons, including because the central theory of her

Complaint is that she was wrongly terminated from MCIM "for Cause" as set forth and defined

in the Employment Agreement (*not* the Addendum). But even so, the Addendum is *also*

governed by Bermuda law and *also* contains a mandatory Bermuda forum selection clause. By

the plain language of either document, this case belongs in Bermuda.

As a result, Fredricks's Complaint should be dismissed in its entirety for (at least)

the following independent reasons:

***First***, this action necessarily implicates and will require the interpretation of

Fredricks's Employment Agreement (under Bermuda law). Its exclusive Bermuda forum

selection clause is valid and enforceable, and the Court should honor it and dismiss this action on

*forum non conveniens* grounds in favor of a Bermuda action. That same result would otherwise

hold under Fredricks's Addendum.

***Second***, and in the alternative, this action should be dismissed on traditional

*forum non conveniens* grounds because the balance of interests overwhelmingly favor an action

in Bermuda. Bermuda is where the wrongs allegedly occurred and where nearly all of the

witnesses and documents are located. Bermuda law applies to all of Fredricks's claims, and

Bermuda courts have an interest in resolving local disputes.

Under either analysis, Bermuda is the appropriate forum for this dispute.

## FACTUAL BACKGROUND[1]

1. ### Fredricks Began Working For MCIM And Soon Relocated To Bermuda

MCIM is a reinsurance investment company organized under Bermuda law and

---

[1]      Citations to the Complaint are cited as "Compl. ¶ __." Defendants assume only for
purposes of this motion that such allegations are true, but do not otherwise concede their
accuracy.

headquartered in Hamilton, Bermuda.  (Compl. ¶ 17.)  MCIM is a wholly-owned subsidiary of

Markel, a holding company for insurance, reinsurance, and investment operations, headquartered

in Glen Allen, Virginia.  (Id. ¶ 18.)  In May 2016, Fredricks was hired by MCIM as a Senior

Actuary.  (Id. ¶ 26.)  Within a few months, Fredricks was promoted to Chief Risk Officer of

MCIM and, in connection with that promotion, Fredricks and MCIM entered into an

employment agreement on December 21, 2016 (the "Employment Agreement").  (Id. ¶ 27;

Carroll Decl.[2] Ex. 1 (hereinafter cited as "Employment Agreement").)  As contemplated by the

Employment Agreement, Fredricks moved to Bermuda in March 2017.  (Compl. ¶ 28;

Employment Agreement at 1 (noting the "Effective Date" of the agreement as the date

"Employee relocates her principal residence and moves to Bermuda").)  Fredricks lived in

Bermuda until very recently, and as discussed further herein the wrongdoing leading to her

termination took place in Bermuda while she lived there.  (See Compl. ¶ 22.)

## 2.     Fredricks's Employment Agreement<br>Contains A *Mandatory* Bermuda Forum Selection Clause

Fredricks's Employment Agreement set forth her duties and significant

compensation at MCIM, including the grounds on which she could be terminated and the

consequences of such a termination.  The Employment Agreement contained, among other

provisions:

- **the "Principal duties of [Fredricks],"** which included her promises to "act at all times in the best interests, and promote and protect the interests, of the Company," and to "conduct the Employee and the Employee's activities on behalf of the Company in compliance with all proper standards of corporate governance and all applicable policies and codes of the Company and its

---

[2]      A copy of Fredricks's Employment Agreement, which is incorporated by referenced in the Complaint, is provided herewith in the Transmittal Declaration of James R. Carroll  See infra at 6-7 (noting that the Court can consider documents that are incorporated by referenced in the Complaint).

affiliates"  (Employment Agreement § 3);

- **a "Termination" section,** which enumerated specific instances in which Fredricks could be terminated "for Cause," which included for "material misconduct or material default in the course of the Employee's employment, or if the Employee committed any serious breach . . . of any of the Employee's duties and obligations as an employee" (<u>id.</u> § 10.1); and

- **a "Consequences of Termination" section,** which made cross-references to the "Incentive Compensation" provided in Schedule 2 to the Employment Agreement, and collectively provided that "in the event the Company terminates the Employee's employment for Cause . . . the Employee shall not be entitled to, or receive, any then un-earned or unpaid [Incentive Compensation]," (<u>id.</u> § 10.1 & Sch. 2).

The Employment Agreement included a "Law" section, which provided:  "This Agreement shall be governed by and construed in accordance with Bermuda Law and the parties subject to the *exclusive jurisdiction of the Bermuda Courts*."  (<u>Id.</u> § 16 (emphasis added).)

3.    **Fredricks And MCIM Executed An Addendum
       To Fredricks's Employment Agreement, Which Also
       Contains A Mandatory Bermuda Forum Selection Clause, And
       <u>Leaves Other Provisions Of Fredricks's Employment Agreement Unchanged</u>**

After MCIM and Fredricks executed the Employment Agreement in December 2016, the parties thereafter agreed to a number of short "addendums" to that agreement, which principally functioned to increase Fredricks's compensation but did not function as stand-alone contracts (each referred to and incorporated the Employment Agreement; in particular, certain substantive provisions and defined terms contained in the Employment Agreement).  (<u>See</u> Compl. ¶ 22 (referencing prior agreements between Fredricks and MCIM).)  In particular, the October 19, 2018 addendum (the "Addendum") provided:

> [T]his [Addendum] amends your Employment Agreement dated as of December 21, 2016 . . . as follows (other capitalized terms shall have the meaning defined in the Employment Agreement):  (1) Schedule 2 to the Employment Agreement is deleted in its entirety and replaced with the Schedule 2 attached to this Addendum[,] (2) All other provisions of the Employment Agreement not specifically addressed remain unchanged.

(Compl. Ex. 1 ("Addendum") at 1.)[3]  This Addendum changed the amount of Fredricks's "Incentive Compensation," and also provided -- as had the Employment Agreement -- that "in the event the Company terminates the Employee's employment for Cause, or for a valid reason connected to performance or misconduct . . . any portion of the Retention Bonus that has not Vested shall be immediately repayable to the Company . . . and . . . any unpaid Continued Service Payments shall be deemed not earned and not paid."  (Id. at 4.)  The definition of "for Cause" and the consequences of any termination were set forth in the Employment Agreement. (Employment Agreement § 10.1)  The Addendum, in turn, included a schedule that was appended to and incorporated by reference in the Employment Agreement.  (See Addendum at 1; Employment Agreement § 10.1.)

The Addendum also contained a "Governing Law; Venue" section which provided:  "[t]his Addendum shall be governed by Bermuda law and the parties agree to submit to the jurisdiction of the Supreme Court of Bermuda."  (Addendum at 4.)

**4.      Fredricks's Employment From MCIM Is Terminated**
**"For Cause" Under The Employment Agreement, And**
**<u>Fredricks Commences This Action Challenging That Decision</u>**

In November 2018, governmental authorities inquired of Markel about MCIM's recording of loss reserves in late 2017 and early 2018.  (Compl. ¶ 34.)  In response to those inquiries and at the behest of the government authorities, Markel collected documents and information to respond to the inquiries.  (See id. ¶¶ 34-35.)  During the course of that Board-authorized collection and review, it was discovered that Fredricks had an undisclosed personal

---

[3]      Defendants dispute the enforceability of the Addendum, including because Anthony Belisle, the Chief Executive Officer of MCIM, and Ms. Fredricks agreed to that Addendum without the requisite notice to or approval from MCIM, and the Addendum was entered into when Ms. Fredricks was engaged in an undisclosed personal relationship with Mr. Belisle (the same person who recommended her increase in compensation and executed the Addendum).

relationship with her immediate supervisor, Anthony Belisle, the Chief Executive Officer of MCIM. (See id. ¶ 50.) The affair itself was an obvious conflict of interest and, as a result, the MCIM Board thereafter voted to terminate Fredricks "for Cause" under her Employment Agreement. (Id. ¶ 59 (alleging that Fredricks received a Notice of Termination of Employment from Defendants, which stated that Fredricks "had been terminated for 'Cause, as defined in [her] employment agreement'" because Fredricks had "breached [her] Employment Agreement").)

Fredricks has sued Defendants for withholding certain "Incentive Compensation" allegedly due to her because (in her view) her employment with MCIM should not have been terminated "for Cause."[4] (See, e.g., id. ¶¶ 59, 80-81, 85.) The Complaint makes plain that the circumstances giving rise to Fredricks's action occurred in Bermuda (not Massachusetts) and will involve the application of Bermuda law, and that the relevant events occurred, and the relevant documents and witnesses are located, in Bermuda (not Massachusetts).

## LEGAL STANDARD

A motion to dismiss on the basis of a valid forum selection clause is considered under the standards applicable to Fed. R. Civ. P. 12(b)(6), and the Court must "accept as true the well-pleaded factual allegations of the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). In ruling on such motions, the Court may consider "documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (noting that when "a complaint's factual allegations are

---

[4]     The Complaint asserts nine claims: breach of contract (Count I), wrongful dismissal/violation of addendum (Count II), breach of the implied covenant of good faith and fair dealing (Count III), intentional interference with contractual relations (Count IV), unjust enrichment (Count V), defamation (Count VI), invasion of privacy (Count VII), declaratory judgment of obligation to indemnify (Count VIII) and deceptive and unfair acts and unfair methods of competition in the conduct of trade or commerce under Mass. Gen. L. C. 93A, § 11 (Count IX).

6

expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); see also Pittman v. Zoar Outdoor Adventure Resort, Inc., Civ A. No. 16-30182-MGM, 2017 WL 2962891, at *2 (D. Mass. June 9, 2017) (considering agreement, including its choice of forum provision, that was referenced in the defendants' counterclaims when considering the plaintiff's motion to dismiss on the basis of a forum selection clause).

**ARGUMENT**

I.   **THE EMPLOYMENT AGREEMENT'S FORUM SELECTION CLAUSE
     IS VALID, ENFORCEABLE, AND APPLIES TO FREDRICKS'S CLAIMS**

This action falls within the scope of the mandatory forum selection clause of Fredricks's Employment Agreement, which is enforceable under both federal common law and Bermuda law.  As a result, the Court should dismiss this action to give the parties' intended effect to that forum selection clause.  (See infra, Sections A-C.)  (The Addendum's forum selection clause is *also* mandatory and would compel the same result.  (See infra, Section D.))

A.   **Fredricks's Contract Claims Fall Within The Scope
     Of The Employment Agreement's Mandatory Forum Selection Clause**

There is no dispute about the *mandatory* nature of the forum selection clause in Fredricks's Employment Agreement, which provides for the "*exclusive* jurisdiction of the Bermuda Courts."[5]  (Employment Agreement § 16 (emphasis added).)  Instead, Fredricks appears to allege that this action is not within the "scope" of that forum selection clause.  But the nature and allegations of the Complaint make clear that it is.

The whole of Fredricks's Employment Agreement is indisputably governed by

---

[5]   The Complaint acknowledges that the parties agreed "to an exclusive forum" in the "other contracts between Plaintiff and [MCIM]."  (Compl. ¶ 22.)

Bermuda law. (Employment Agreement § 16 ("This Agreement shall be governed by and construed in accordance with Bermuda Law . . . .").) Therefore, whether this action is within the scope of that agreement's forum selection clause also must be decided under Bermuda law. Huffington v. T.C. Grp., LLC, 637 F.3d 18, 21 (1st Cir. 2011) (holding that the "scope question" of the forum selection clause was governed by Delaware law where "the agreement itself-- necessarily including the forum selection clause--is . . . governed by Delaware law"). As discussed in the accompanying Declaration of Alexander Potts, QC (cited as "Potts Decl."), a Bermuda lawyer and Queen's Counsel, it is beyond doubt that application of Bermuda law dictates a finding that this action *is* within the scope of the Employment Agreement's mandatory forum selection clause.

To resolve Fredricks's claims, the factfinder will necessarily have to interpret not just the Addendum, but also -- and to a far greater degree -- the Employment Agreement. (Potts Decl. ¶ 49(1)-(9).) At a minimum, the factfinder will have to assess:

(i) the nature and scope of Fredricks's obligations to MCIM under her Employment Agreement (Employment Agreement § 3 ("Principal duties of the Employee"); such obligations are not set forth in the Addendum);

(ii) whether Fredricks performed those obligations "in every material respect" as required under the Employment Agreement (see Compl. ¶ 78; Employment Agreement § 3 ("Principal duties of the Employee"));

(iii) the meaning and scope of the "for Cause" and "without Cause" provisions of Employment Agreement (Employment Agreement § 10 ("Termination"); those terms are not defined in the Addendum); and

(iv) whether Fredricks was appropriately terminated "for Cause" as defined in the Employment Agreement (see Compl. ¶ 81; Employment Agreement § 10 ("Termination")).

(Potts. Decl. ¶ 49(1).) Those determinations, among others, will dictate Fredricks's entitlement (or not) to the "Incentive Compensation" provided under the Addendum (id.), and cannot be addressed without interpreting the Employment Agreement.

8

As a result, by the plain terms of the Employment Agreement's forum selection clause, those questions and this action are subject to the "exclusive jurisdiction of the Bermuda Courts." (Employment Agreement § 16; Potts Decl. ¶ 3(2).)  This is confirmed by the allegations in Fredricks's Complaint, which are replete with references to the terms of the Employment Agreement (which is unsurprising because the "Addendum," even by its name, is not a free-standing contract).[6]  (See, e.g., Compl. ¶¶ 1, 3-5, 10, 20, 22, 27, 44, 50; see also Compl. Count I; Potts Decl. ¶¶ 29-31.)  Because this action necessarily requires that a court construe the terms of Fredricks's Employment Agreement, the forum selection clause of that contract applies.[7]

### B.    The Employment Agreement's Mandatory Forum Selection Clause Is Enforceable

Because this action falls within the scope of the Employment Agreement's mandatory forum selection clause, it is "prima facie valid" and should be honored unless Fredricks can demonstrate a valid reason why it should not be enforced.  Rivera, 575 F.3d at 18. The U.S. Supreme Court and the First Circuit have expressly left open the question -- for Erie purposes -- of whether the issue of a forum selection clause's enforceability is "procedural" in

---

[6]    In any event, the Court could also conclude that this action falls within the scope of the *Addendum's* forum selection clause, and that -- as a matter of Bermuda law -- that clause provides for an exclusive Bermuda forum.  (See infra Section D.)

[7]    The same result would obtain if the Court considered the issue under Massachusetts law. In particular, courts in this District have repeatedly criticized parties that have attempted (as Fredricks does here) to "artful[ly] plead" claims so as to avoid the application of a forum selection clause, or otherwise assert breach of contract claims without making specific reference to "interrelated agreements" containing applicable forum selection clauses.  See, e.g., Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 61 (D. Mass. 2011) (dismissing all of the plaintiff's claims under the forum selection clause while noting that the plaintiff "cannot evade the forum selection clause to which he agreed in writing by describing his claims as Chapter 93A violations"); Deese-Laurent v. Real Liquidity, Inc., 305 F. Supp. 3d 280, 283-85 (D. Mass. 2018) (transferring case to Florida on the basis of a forum selection clause and rejecting the plaintiff's argument "that his claims neither 'arise out of' nor are 'based upon,'" a contract with a mandatory forum selection clause, because "[h]is own complaint . . . belies this argument and reveals all five interrelated agreements as integral to" the plaintiff's claims).

nature (and thus decided under federal common law) or "substantive" in nature (and thus decided under the pertinent foreign law identified in the forum selection clause (here, Bermuda law[8])). Huffington, 637 F.3d at 23.  Courts need not decide this "daunting question" in cases (as here) where the outcome under either analysis remains the same.  See Kurra, 2016 WL 5109132, at *9 (finding "no material difference" between the enforceability question under federal common law or Michigan law).

Here, the Employment Agreement's forum selection clause is enforceable under both federal common law and Bermuda law.

### 1.     The Forum Selection Clause Is Enforceable Under Federal Law

Under federal common law, a forum selection clause "should control absent a *strong showing* that it should be set aside, and the party resisting enforcement bears the '*heavy burden*' of demonstrating why the clause should not be enforced."  Huffington, 637 F.3d at 21 (internal citations omitted) (emphasis added).  In particular, the First Circuit has identified four grounds for finding a forum selection clause unenforceable:

> (i) the clause was the product of "fraud or overreaching"; (ii) "enforcement would be unreasonable and unjust"; (iii) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (iv) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Id. (quoting The Bremen v. Zapata Off–Shore Co., 407 U.S. 1 (1972) (internal citations

---

[8]     If the enforceability of the forum selection clause is considered a "substantive" issue, Massachusetts choice-of-law rules would compel the Court to apply Bermuda law, particularly where the forum selection clause expressly provides that it shall be "construed in accordance with Bermuda Law."  (Employment Agreement § 16; see Kurra v. Synergy Comput. Sols., Inc., Civ. A. No. 15-cv-13952-ADB, 2016 WL 5109132, at *8-9 (D. Mass. Sept. 19, 2016) (noting that "Massachusetts' choice-of-law rules would compel the Court to apply Michigan law, as the parties' [] Agreement expressly provides that the Agreement 'shall be construed in accordance with Michigan law'").)

omitted)).

         None of these factors are satisfied here, nor could they be.  There is no hint of

fraud or overreach, and enforcement would not contravene Massachusetts public policy (nor

would it otherwise be unreasonable or unjust in any way).  At *best*, Fredricks may argue that she

is inconvenienced by litigating in Bermuda because her "contacts with Bermuda will completely

end within a matter of days when her lease expires on March 31, 2019, her work permit having

already expired on March 15, 2019."  (See Compl. ¶ 22.)  However, the Complaint makes no

allegations of financial hardship.  And invalidating a forum selection on the third Huffington

factor requires an "extraordinary" showing of inconvenience not met by allowing a lease to

expire, moving away, and then claiming inconvenience.  In re Mercurio, 402 F.3d 62, 65 (1st

Cir. 2005) (noting that "the heavy burden of proof . . . required to set aside [a forum selection]

clause . . . demands more of a litigant . . . than simply showing that another location would be

more convenient.  Were it otherwise, forum selection clauses would almost never be enforceable,

for inconvenience to at least one of the parties is an almost forgone conclusion."); Get In Shape

Franchise, Inc. v. Caldwell, Civ. A. No. 15-13118-NMG, 2016 WL 11002219, at *6 (D. Mass.

Feb. 18, 2016) (noting that the party challenging the enforceability of a forum selection clause on

convenience grounds must prove that enforcement "would be so inconvenient 'to the point of

practical impossibility'" (internal citations omitted)).

         Bermuda is a sophisticated forum where Fredricks lived and worked as a business

executive for years, and is only a two-hour direct (and relatively inexpensive) flight from Boston.

While requiring Fredricks to litigate there may be somewhat less convenient for her, it would not

inflict such an "extraordinary" burden so as to render the contractually-agreed forum selection

clause unenforceable.  See, e.g., EMC Corp. v. Petter, 104 F. Supp. 3d 127, 131-33 (D. Mass

2015) (finding forum selection clause requiring U.K.-based employee to litigate his claims against his former Massachusetts-based employer in Massachusetts was not "so gravely difficult" so as to render the clause unenforceable, particularly where the employee was "no stranger to traveling to Massachusetts for professional purposes").  Fredricks has not met, and cannot meet, her "heavy burden" of demonstrating why the forum selection clause should not be enforced under federal law.  Id. at 132.

### 2. The Forum Selection Clause Is Enforceable Under Bermuda Law

Bermuda law employs a similar analysis with respect to the enforceability of forum selection clauses, which compels the same result as under federal common law.  (Potts Decl. ¶¶ 36-41.)  The accompanying Potts Declaration sets forth the legal analysis under Bermuda law in detail.  (Id.)  In particular, Bermuda courts following the "general rule" that:

> [P]arties will be held to their contractual choice of . . . jurisdiction *unless there are overwhelming, or at least very strong, reasons for departing from this rule*.  Whilst the court retains discretion in an exceptional case not to give effect to an exclusive jurisdiction clause, that discretion is only to be exercised in *extremely limited exceptional circumstances which could not have been foreseen*.

(Potts Decl. ¶ 40 (quoting Athene Holding Ltd. v. Siddiqui et al., 2019 SC (BDA) 3 COM (emphasis added).)  Like U.S. courts, Bermuda courts have rejected arguments about purported inconvenience similar to those that Fredricks purports to allege here, particularly where the "factors of convenience [] were foreseeable at the time that the contract was entered into."  (Potts Decl. ¶ 40 (citing Cape Ventures SAC Ltd. v. CC Private Equity Ptrs. Ltd., 2009 BDA LR 54 (enforcing forum selection clause selecting Switzerland forum notwithstanding inconvenience to Bermuda-based plaintiff); Athene, 2019 SC (BDA) 3 COM (enforcing forum selection clause selecting Bermuda forum notwithstanding inconvenience to New York-based defendant)).)  Fredricks's Complaint provides no reason -- let alone "overwhelming, or at least very strong,

reasons" -- for departing from the "general rule" that forum selection clauses are to be enforced under Bermuda law.  See Athene, 2019 SC (BDA) 3 COM.

Thus, under Bermuda law as well as U.S. law, the Employment Agreement's forum selection clause is enforceable.

**C.      As A Result Of The Mandatory
Forum Selection Clause, The Court Should Dismiss This Case
On *Forum Non Conveniens* Grounds In Favor Of A Bermuda Action**

**1.      Fredricks's Contract-Related Claims
Should Be Dismissed Under The Modified
*Forum Non Conveniens* Analysis In Favor Or A Bermuda Action**

Because the Employment Agreement's forum selection clause is valid, enforceable, and applies to Fredricks's claims, this case should be dismissed on *forum non conveniens* grounds.  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 60 (2013) (holding that *forum non conveniens* is the proper mechanism to enforce a forum selection clause designating a foreign forum).  Under a traditional *forum non conveniens* analysis, the court examines: (i) whether "an adequate alternative forum exists," and (ii) whether the balance of "private and public interest factors" favors dismissal.[9]  Get In Shape, 2016 WL 11002219, at *3.  However, where, as here, the case involves a contract with a valid and enforceable forum selection clause, "[t]he calculus changes."  Atl. Marine, 571 U.S. at 63.  In this scenario, the court should assume that any private interest factors weigh in favor of dismissal.  See id. at 64.  As a result, aside from the adequacy of the foreign forum, the court

---

[9]      In particular, such "private interest" factors include:  "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Atl. Marine, 571 U.S. at 62 n.6.  The "public interest" factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  Id.

may only consider public interest factors in the *forum non conveniens* analysis.  Id.  Moreover,

the plaintiff "bear[s] the burden of showing why the court should not transfer the case to the

forum to which the parties agreed."  Id.  To satisfy that burden, the plaintiff must show that

"public-interest factors *overwhelmingly disfavor* a transfer."  Id. at 67 (emphasis added).

"Because [these] factors will rarely defeat a transfer motion, the practical result is that forum-

selection clauses should control except in unusual cases."  Id. at 64.

        This action is not the "rare[]" or "unusual" case where the forum selection clause

should not control:

### *Fredricks cannot establish that Bermuda is an inadequate alternative forum.*

An adequate alternative forum exists if the defendants are amenable to process in the foreign

forum and the jurisdiction's legal system has the potential to provide some remedy to plaintiffs

for their alleged wrong.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22  (1981).  Here,

Bermuda is a sophisticated forum that permits "litigation of the [same] subject matter" alleged in

Fredricks's Complaint.  (Potts Decl. ¶ 51; see Interface Partners Int'l Ltd. v. Hananel, 575 F.3d

97, 103 (1st Cir. 2009) (citing Piper, 454 U.S. at 254 n.22).)  In particular, the Potts Declaration

explains that "Bermuda Courts will permit litigation of the same (or substantially the same)

subject matter as is alleged in [Fredricks's] Complaint."  (Potts Decl. ¶ 51 (describing the

equivalent Bermuda-based claim for each of the nine counts in Fredricks's Complaint).)

Unsurprisingly, other federal courts have found Bermuda to be an adequate alternative forum to

U.S. federal courts and have dismissed actions on *forum non conveniens* grounds.  See, e.g.,

LVAR, L.P. v. Bermuda Commercial Bank Ltd., Civ. A. No. 13-cv-9148, 2015 WL 1267368, at

*5 (S.D.N.Y. Mar. 18, 2015) (dismissing breach of trust case on *forum non conveniens* in favor

of Bermuda action), aff'd, 649 F. App'x 25 (2d Cir. 2016); see also Cromer Fin. Ltd. v. Berger,

158 F. Supp. 2d 347, 353 (S.D.N.Y. 2001) (noting that "there is no basis for dispute that Bermuda is an adequate alternative forum").

*Fredricks cannot meet her heavy burden of showing that the public interest factors (if any) overwhelmingly disfavor dismissal.* The courts in Bermuda have a strong, localized interest in adjudicating this action because the events at issue all occurred in Bermuda. Fredricks was living and working in Bermuda while employed by MCIM, while engaged in the activity that led to her termination, and when her employment with MCIM was terminated. (See Compl. ¶ 28.) Moreover, the public interest factors additionally favor transfer to Bermuda, because where the Employment Agreement is governed by Bermuda law, a Bermuda court will be "at home with the [] law that must govern the case" and will be adept to resolve the action quickly. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 511-12 (1947) (noting that the case "would be simplified by trial in Virginia. . . . The course of adjudication in New York federal court might be beset with conflict of laws problems all avoided if the case is litigated in Virginia where it arose"), superseded by statute on other grounds recognized in American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994); see also Potts Decl. ¶ 56 (opining that a Bermuda action could be resolved "in a period between six months and two years").

As a result, the Court should dismiss Fredricks's contract-related claims under *forum non conveniens*.

### 2. Consistent With Judicial Economy, Fredricks's Remaining Claims Should Likewise Be Dismissed In Favor Or A Bermuda Action

If this Court dismisses Fredricks's contract-related claims on *forum non conveniens* grounds in favor of a Bermuda action, the Court should additionally dismiss Fredricks's remaining claims (which are also subject to Bermuda law) to be pled in a Bermuda action. The First Circuit has repeatedly held that "'claims involving the same operative facts' as a

claim for breach of contract that is subject to a forum selection clause should also be litigated in

the forum chosen by the parties," because "[t]o hold otherwise would be to ignore the

fundamental principle of judicial economy."[10]   Rivera, 575 F.3d at 24; see also Lambert v.

Kysar, 983 F.2d 1110, 1121–22 (1st Cir. 1993) ("The better general rule, we think, is that

contract-related tort claims involving the same operative facts as a parallel claim for breach of

contract should be heard in the forum selected by the contracting parties.").   Under that mandate,

district courts dismissing contract claims on the bases of a forum selection clause routinely

dismiss any additional claims in those actions that arise from the "same operative facts."  See,

e.g., Get In Shape, 2016 WL 11002219, at *7 & n.8 (dismissing additional tort and statute claims

even though they "do not relate directly to enforcement or interpretation of the Franchise

Agreement," because "those claims should be dismissed in the interest of judicial economy" and

otherwise under the court's "broad discretion" to dismiss on *forum non conveniens* grounds);

Provanzano, 827 F. Supp. 2d at 61 (dismissing all of the plaintiff's claims, including a M.G.L.

ch. 93A claim, pursuant to a forum selection clause, even though only one of the two contracts at

issue had a forum selection clause, as "it would be a significant waste of judicial resources" to

otherwise try the case in two separate actions).  As discussed in the Potts Declaration, a Bermuda

court is likely to accept jurisdiction over all of the claims presently alleged in Fredricks's

---

[10]     The result is the same under Bermuda law.  Bermuda courts apply a "broad and purposive
approach" when construing the scope of an exclusive jurisdiction clause.  (Potts Decl. ¶¶ 35(1),
44.)  Applying that approach to the reading of the Employment Agreement, the Potts Declaration
explains that, under Bermuda law, "the proper meaning and effect of [the Employment
Agreement's forum selection clause] is that any and all disputes *relating to* the Employment
Agreement . . . are subject to Bermuda law and the exclusive jurisdiction of the Bermuda
Courts."  (Potts Decl. ¶¶ 45-46 (citing Fiona Trust & Holding Corp. v. Privalov, [2007] UKHL
40).)  Indeed, it can hardly be disputed that each of Fredricks's remaining claims "relate to" the
Employment Agreement.  (See Potts Decl. Potts Decl. ¶ 49 (describing that a Bermuda court
would consider each of Fredricks's claims to "relate to" the Employment Agreement).)

Complaint.  (Potts Decl. ¶¶ 23-25.)

Here, the remainder of Fredricks's claims arise from the same operative facts as her breach of contract claim and should be dismissed alongside those contract claims if the Court dismisses on *forum non conveniens* grounds in favor of a Bermuda action.  See Rivera, 575 F.3d at 24.

### D.    The Addendum Also Contains A Mandatory Forum Selection Clause And Likewise Compels The Dismissal Of This Action

Even under Fredricks's (mistaken) theory that her breach of contract claim *only* arises out of the Addendum, this action nevertheless belongs in Bermuda because that document also contains a forum selection clause mandating a Bermuda forum.  Although Fredricks's Complaint suggests that the Addendum's forum selection clause is not an "exclusive forum-selection provision[]," (Compl. ¶ 22), the Potts Declaration demonstrates that Fredricks is incorrect as a matter of Bermuda law on multiple, independent bases.

***Because the Addendum is integrated into the Employment Agreement, Bermuda law requires that courts endeavor to construe both forum selection clauses harmoniously.***  As the Potts Declaration explains, Bermuda law requires that every contract "is to be construed with reference to its object and the whole of its terms," and that, in so doing, Bermuda law requires that courts apply a "harmonious," "uniform and consistent" approach to various clauses within a single contract.  (Potts Decl. ¶ 29.)  Moreover, courts applying Bermuda law additionally interpret related (but separate) agreements by taking into account the overall "scheme" of the agreements.  (Id. (citing Re Sigma Finance Corporation, [2009] UKSC 2; Kingate Global Fund Limited et al v Kingate Management Ltd et al., [2015] SC Bda 65 Com); see also id. ¶ 32 (noting that "parties to an arrangement between them set out in multiple related agreements do not generally intend a dispute to be litigated in two different tribunals" (citing

17

Sebastian Holdings Inc. v Deutsche Bank, [2011] 1 Lloyd's Rep 106 )).)  Under these principles,

the Employment Agreement and the Addendum should be read harmoniously.  Therefore, the

Addendum's forum selection clause should be interpreted -- as is the case in the Employment

Agreement -- to provide Bermuda courts with *exclusive* jurisdiction.  (Potts Decl. ¶¶ 33-35.)

   ***The Addendum provides that the parties "agree to submit" to the Bermuda***

***Courts, which connotes legal obligation rather than a permissive choice.***  Even when the

language of the Addendum's forum selection clause is viewed in isolation, it provides for the

exclusive jurisdiction in Bermuda courts.  As explained in the Potts Declaration, the use of

language that the "parties agree to *submit* to the jurisdiction of the Supreme Court of Bermuda"

has connotations -- as a matter of Bermuda law -- of "legal obligation (rather than choice or

option)."  (Potts. Decl. ¶ 35(4).)  Bermudian courts do not specifically require that parties use the

word "exclusive" in forum selection clauses to interpret them as requiring exclusivity.  (Id. at ¶

35(2) (citing Re A Trust, [2012] SC Bda 72 (noting that "the absence of the word 'exclusive' . . .

did not matter")).)

   ***Because Fredricks and MCIM are already subject to jurisdiction in Bermuda,***

***the Addendum's forum selection clause would be meaningless (or otherwise duplicative)***

***unless it is interpreted to provide for an exclusive Bermuda forum.***  As discussed in the Potts

Declaration, both Fredricks and MCIM are subject to jurisdiction in Bermuda for claims relating

to Fredricks's employment at MCIM.  (Potts Decl. ¶¶ 24-25.)  In light of this, and as explained in

the Potts Declaration, "if Bermuda Court jurisdiction already arises for other reasons in any

event," a "Bermuda Court may properly conclude that the parties must have intended to add

something -- i.e., exclusivity -- by specifically including a Bermuda jurisdiction clause in their

contract."  (Id. ¶ 26(1) (citing Re A Trust, [2012] SC Bda).)  Indeed, to find otherwise would --

contrary to Bermuda contract principles -- render the Addendum's forum selection clause

"redundant or otiose."  (Id.)

The Addendum's forum selection clause -- like the Employment Agreement's

forum selection clause -- is enforceable and provides for an exclusive Bermuda forum.  As a

result, this Court can (and should) dismiss this action to give effect to that clause.  (See supra,

Sections B-C (explaining enforceability and *forum non conveniens* considerations under the

Employment Agreement that apply with like force here).)

**II.    EVEN IF THE COURT DID NOT
        CREDIT THE EMPLOYMENT AGREEMENT'S
        MANDATORY FORUM SELECTION CLAUSE, THIS CASE
        SHOULD NEVERTHELESS BE DISMISSED ON *FORUM NON
        CONVENIENS* GROUNDS IN FAVOR OF A BERMUDA ACTION**

Even if the Court found that the Employment Agreement's or the Addendum's

mandatory forum selection clauses were in any way inapplicable or unenforceable (though they

are not), dismissal of this action in favor of a Bermuda forum would be otherwise appropriate

under traditional *forum non conveniens* standards.  Under a traditional *forum non conveniens*

analysis, the court examines: (i) whether "an adequate alternative forum exists," and (ii) whether

the balance of "private and public interest factors" favors dismissal.  Get In Shape, 2016 WL

11002219, at *3.  An examination of these factors -- even without considering the Employment

Agreement's or the Addendum's mandatory forum selection clauses -- counsels for transfer to

Bermuda.

*Bermuda is an adequate alternative forum.*  Bermuda is an adequate alternative

forum for Fredricks's claims.  (See supra at 14-15; Potts Decl. ¶¶ 50-58.)

*The public interest factors overwhelmingly favor dismissal for a Bermuda*

*action.*  Bermuda presents the more suitable forum for Fredricks's Complaint because a Bermuda

court (not *Massachusetts*) has an interest in having this "localized controvers[y] decided at

home" and will otherwise be "at home with the law." Atl. Marine, 571 U.S. at 62 n.6; see also supra at 15; Potts Decl. ¶ 24(2)-(4). Even beyond the contract-related claims which are governed by Bermuda law, see supra, each additional claim alleged in Fredricks's Complaint is better served by resolution in a Bermuda court. For example, Fredricks's Complaint requests a declaratory judgment regarding MCIM's purported obligation to indemnify Fredricks under MCIM's Bye-Laws. (Compl. ¶¶ 142-53.) This indemnification claim -- brought by a Bermuda-based director under the Bermuda law-governed Bye-Laws of a Bermuda-based company -- should also be decided in Bermuda. The same result holds for Fredricks's remaining claims, which are likely governed by Bermuda law because the claims occurred *in Bermuda* (and because Fredricks was domiciled *in Bermuda* at the time of the alleged harm), such that Bermuda has the "more significant relationship" to those claims.[11] While U.S. courts are of course able to apply foreign law, dismissal on *forum non conveniens* grounds is often proper where it obviates the need for such a practice. See, e.g., Imamura v. Gen. Elec. Co., Civ. A. No. 17-cv-12278-PBS, 2019 WL 1513454, at *11 (D. Mass. Apr. 8, 2019) (dismissing action to Japan on *forum non conveniens* grounds including because the action would require the court to "apply Japanese law to resolve this dispute," which "points to dismissal"); Snofrost, 353 F. Supp. 3d at 109

---

[11]     See, e.g., McKee v. Cosby, 236 F. Supp. 3d 427, 436 (D. Mass. 2017) (noting that under Massachusetts choice-of-law principles, "the state where the defamed person was domiciled at the time of publication applies if the matter complained of was published in that state," and applying law of the domicile state to plaintiff's defamation claims even though plaintiff "intended to change her residence" at the time of publication), aff'd, 874 F.3d 54 (1st Cir. 2017); Kelley v. Schlumberger Tech. Corp., Civ. A. No. 85-4794-Z, 1987 WL 9908, at *2 (D. Mass. Apr. 13, 1987) (applying Louisiana law for a Massachusetts-based plaintiff's invasion of privacy claim against his Louisiana-based employer where plaintiff was working in Louisiana at the time of the alleged invasion). To be sure, in considering which jurisdiction is "at home" with the law when applying a *forum non conveniens* analysis, the Court need not "make a definitive determination regarding the choice of . . . law" instead "[l]ikelihood is sufficient." Snofrost AB v. Hakansson, 353 F. Supp. 3d 99, 109 (D. Mass. 2018).

(dismissing action to Sweden on *forum non conveniens* grounds while noting that "to prove Swedish law, affidavits and the associated translations of Swedish authorities would likely be marshalled by both parties.  Combined with that cost and inefficiency, the practical reality is that a Swedish court would, by definition, be more competent to decide and apply the applicable Swedish law").

          ***The private factors likewise overwhelmingly favor dismissal for a Bermuda action.***  The private interest factors (which are not considered in a *forum non conveniens* analysis involving a forum selection clause, but are otherwise applicable under a traditional analysis), likewise favor dismissal here.  In particular, "the fact that the events relating to [the Defendants'] alleged misconduct occurred in [Bermuda]" – <u>i.e.</u>, that Fredricks was living and working in Bermuda for Bermuda-based MCIM when she was terminated "for Cause" under her Employment Agreement (governed by Bermuda law) by MCIM's board of directors during a meeting in Bermuda (<u>see</u> Compl. ¶¶ 27-28, 34-35, 59) -- "*weighs heavily* in favor of the foreign forum."  <u>See</u> <u>Interface</u>, 575 F.3d at 104 (emphasis added) (affirming dismissal on *forum non conveniens* where performance of contract and alleged breaches took place in Israel, and key witnesses and documents were located in Israel); <u>see</u> <u>also</u> <u>Howe v. Goldcorp Inv., Ltd.</u>, 946 F.2d 944, 951 (1st Cir. 1991) (holding that the balance of conveniences favor defendants seeking a Canadian forum because "[t]he relevant events surrounding both plaintiff's misrepresentation and breach of fiduciary duty claims took place *in Canada*, not in the United States" (emphasis in original)); <u>Imamura</u>, 2019 WL 1513454, at *8 (noting that "[t]he difficult access to sources of proof [] favors dismissal" including because "[t]he witnesses and documents in Japan likely far outnumber those in the United States, and the Japanese evidence is central to many core issues in the litigation, such as causation, damages, and apportionment of liability among third parties");

Snofrost, 353 F. Supp. 3d at 108 (noting that because Sweden is "where the center of gravity lies" in the case counseled for dismissal).

Because this action has no connection with Massachusetts other than that Fredricks moved here shortly before suing, litigating in Bermuda -- where most or all of the witnesses, relevant documents, and other "sources of proof" are located -- will ensure "that fewer evidentiary problems w[ill] be posed" by the parties.  See Atl. Marine, 571 U.S. at 62 n.6; Piper, 454 U.S. at 258.

As a result, this Court is well within its discretion to dismiss this action on traditional *forum non conveniens* grounds, and should do so if it concludes that the case should not be dismissed pursuant to the forum selection clause.[12]

## CONCLUSION

For all the foregoing reasons, Fredricks's Amended Complaint should be dismissed in its entirety with prejudice.

---

[12]     Fredricks's Complaint could be dismissed for the additional reason that MCIM and Markel are not subject to personal jurisdiction in Massachusetts.  Because this action should be dismissed pursuant to the forum selection clause or under traditional *forum non conveniens* grounds, Defendants do not address that personal jurisdiction analysis here (but neither do they intend to waive it).

Dated:  April 29, 2019
          Boston, Massachusetts

David E. Schwartz (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
david.schwartz@skadden.com

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Christopher A. Lisy (BBO #662283)
SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts  02116
(617) 573-4800
james.carroll@skadden.com
chistopher.lisy@skadden.com

Counsel for Defendants
Markel CATCo Investment Management Ltd
and Markel Corporation