# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ALISSA FREDRICKS** | Civil Action No. 1:19-cv-10331 (RGS) |
| **Plaintiff,** | |
| v. | |
| **MARKEL CATCO INVESTMENT MANAGEMENT LTD AND MARKEL CORP.,** | **DECLARATION OF ALEXANDER POTTS QC** |
| **Defendants.** | |

## DECLARATION OF ALEXANDER POTTS QC

Pursuant to 28 U.S.C. § 1746, I, Alexander James Kenneth Potts QC of Kennedys Chudleigh Ltd., 20 Brunswick Street, Hamilton HM10 Bermuda, declare as follows:

**Introduction**

1. I am a Partner and Director of Kennedys Chudleigh Ltd, a Bermuda law firm of Barristers and Attorneys. I have been instructed by Skadden, Arps, Slate, Meagher & Flom LLP, counsel acting for Defendants Markel Catco Investment Management Ltd ('**Catco**') and Markel Corp. ('**Markel**') in the above-captioned proceedings, to express my opinion in relation to certain matters of Bermuda law (as set out below). I understand that this Declaration will be submitted in connection with a motion by Catco and Markel to dismiss the claims brought by the Plaintiff, Alissa Fredricks ('**Fredricks**') against Catco and Markel, as set out in the Plaintiff's First Amended Complaint and Jury Demand dated 28 March 2019 ('**the Complaint**'). True and correct copies of the various authorities cited in this Declaration (as listed at the bottom of this Declaration) are attached to the concurrently-filed "Appendix of Foreign Authorities".

1

**Matters of Bermuda law considered and summary of my opinion**

2. I have been instructed to express my opinion on the following questions, as a matter of Bermuda law:

    (1) Whether under Bermuda law the "Law" section (§ 16) in the Employment Agreement between Markel CATCo Investment Management Ltd and Alissa Fredricks, dated December 21, 2016 (the "**Employment Agreement**") or the "Governing Law; Venue" section in the Addendum to Statement of Employment dated October 19, 2018 (the "**Addendum**") are enforceable and would create exclusive jurisdiction in the Bermuda courts;

    (2) Whether under Bermuda law the "Law" section (§ 16) in the Employment Agreement or the "Governing Law; Venue" section in the Addendum would encompass any or all claims pled in the Plaintiff's Complaint; and

    (3) Whether, if either clause is enforceable, the Bermuda courts would provide an adequate forum for the claims pled in the Complaint, including with such considerations as (i) whether the Defendants named in the Plaintiff's Complaint could be amenable to process in Bermuda; (ii) whether Bermuda courts permit litigation of the same subject matter alleged in the Plaintiff's Complaint; and (iii) the timing by which a Bermuda court may resolve any action brought by the Plaintiff in such court.

3. In summary (and for the reasons set out in further detail below), I am of the opinion that the answers to the questions set out above are as follows:

    (1) Yes. As a matter of Bermuda law, Clause 16 in the Employment Agreement and the "Governing Law; Venue" clause in the Addendum are both enforceable and they both confer exclusive jurisdiction on the Bermuda courts (whether they are interpreted together or separately).

(2) Yes. As a matter of Bermuda law, Clause 16 in the Employment Agreement and the "Governing Law; Venue" clause in the Addendum are properly interpreted to encompass all of the claims pled in the Plaintiff's Complaint (as characterized from a Bermuda law perspective).

(3) Yes. As a matter of Bermuda law, the Bermuda courts would provide an adequate forum for the claims pled in the Complaint.

**My qualifications to provide this Declaration**

4. I consider that I have the requisite qualifications and expertise to express my opinions on the matters that I have been asked to consider under Bermuda law, in light of the matters set out below and in my CV, a copy of which is attached.

### My professional qualifications

5. I am a practicing member of the Bar of Bermuda, and I am also a practicing member of the Bar of England and Wales. I first entered legal practice in England and Wales in October 2000, and I first entered legal practice in Bermuda in April 2007[1]. I was appointed as a Queen's Counsel of England and Wales in February 2018. I have also been admitted generally to the Bar of the Cayman Islands, in May 2005, although I do not currently practice Cayman Islands law. I am a British citizen and a Permanent Resident of Bermuda.

### My academic qualifications

6. I received a BA (Honours) in English Language and Literature from the University of Oxford (Exeter College) in England in 1998, where I was awarded a First Class degree. I received a Postgraduate Diploma in Law (a course also known as the Common Professional Examination or 'CPE') from City University, London in England in 1999, where I was awarded a Commendation. I received a Postgraduate

---

[1] Bermuda's legal practice rules require that, for foreign lawyers taking up residence in Bermuda, the first year of practice in Bermuda is conducted as a Registered Associate under the employment and supervision of a Bermuda law firm. I therefore practiced Bermuda law as a Registered Associate between April 2007 and April 2008, and I was generally called to the Bermuda Bar, with full rights of audience before all Bermuda courts, in May 2008.

3

Diploma in Legal Studies (a course also known as the Bar Vocational Course or 'BVC') from the Inns of Court School of Law in London (which is now known as the City Law School, a part of City University) in 2000, where I was awarded a Very Competent grade.

## My professional work experience

7. Between October 2001 and March 2007, I practiced full-time as a self-employed barrister at the English Bar in London, specializing in commercial litigation and commercial arbitration. I worked from a Chambers called 4 Pump Court, based in the Temple (where I had also completed my pupillage).

8. From April 2007 to date, I have resided in Bermuda and I have practiced full-time at the Bermuda Bar (for nearly 5 years at the Bermuda law firm, Conyers Dill & Pearman Limited, and for the past 7 years at the Bermuda law firm now known as Kennedys Chudleigh Ltd.). I continue to specialize in commercial litigation and commercial arbitration. In addition to many unreported disputes that I have advised and worked on, I have also appeared as Counsel in a number of pieces of litigation that have resulted in reported judgments of the Bermuda courts: these are listed in my CV, a copy of which is attached.

## Other professional activities relating to Bermuda law

9. In addition to my full-time practice as a barrister, I also participate in various other professional activities that relate to Bermuda law and the Bermuda legal system:

(1) Since January 2014, I have been an appointed member of Bermuda's Copyright Tribunal, a statutory tribunal established for the resolution of copyright disputes under Bermuda's Copyright and Designs Act 2004. In April 2019, I was appointed to act as the Deputy Chairman of the Copyright Tribunal;

(2) Since March 2019, I have been appointed to act as a Commissioner of Bermuda's Human Rights Commission, a statutory body established for the

promotion of human rights and the resolution of certain human rights disputes under Bermuda's Human Rights Act 1981;

(3) I am the author or co-author of a number of articles and book chapters on issues of Bermuda law (including book chapters on Bermuda law in two textbooks that have been edited, or co-edited, by the former Chief Justice of Bermuda, Dr. Ian Kawaley, as well as book chapters co-authored with the current Chief Justice of Bermuda, Mr. Narinder Hargun); and

(4) I have been invited to give presentations at a number of local and international conferences on legal issues and legal developments under Bermuda law.

**Documents reviewed for the purposes of this declaration**

10. For the purposes of this Declaration, I have reviewed copies of the following documents:

(1) the Amended Complaint in the *Fredricks v. Markel CATCo Investment Management Ltd et al.* action (ECF No. 13) (being "**the Complaint**" defined above) and its exhibits (Ex. 1 (Addendum), Ex. 2 (Markel Code of Conduct); Ex. 3 (Markel Code of Conduct dated January 2019), Ex. 4 (Markel CATCo Investment Management Ltd. Bye-Laws);

(2) the offer letter dated March 24, 2016;

(3) the Addendum to Statement of Employment dated October 27, 2016;

(4) the Employment Agreement between Markel CATCo Investment Management Ltd and Alissa Fredricks, dated December 21, 2016 (the "**Employment Agreement**", as already defined above);

(5) the letter to Fredricks enclosing the Employment Agreement dated December 21, 2016;

(6) the transfer letter dated March 21, 2017;

(7) the Addendum to Statement of Employment dated May 30, 2017;

(8) the Addendum to Statement of Employment dated July 19, 2017;

(9) the Addendum to Statement of Employment dated December 23, 2017;

(10)     the Addendum to Statement of Employment dated March 14, 2018;

(11)     the Addendum to Statement of Employment dated October 19, 2018 (the "**Addendum**", as already defined above).

### Background to Bermuda Law and the Bermuda legal system

11. It may be helpful if, as a starting point, I provide some background (by way of summary only) to Bermuda law and the Bermuda legal system.

12. Bermuda is a British Overseas Territory. As such, Bermuda is a self-governing but dependent territory of the United Kingdom, and it is a separate legal jurisdiction from the United Kingdom and its other constituent parts (since Bermuda has its own Parliament and its own Court system). In common with other British Overseas Territories and former colonies, English law was introduced to Bermuda at the date of its settlement. The system of law in Bermuda is therefore founded on the English legal system, although there is a distinct body of Bermudian statute law and Bermudian case law that has developed over the past 400 years.

6

13. In particular, section 15 of the Supreme Court Act 1905 provides that the systems of law administered in Bermuda are (a) the common law[2] (b) the doctrines of equity and (c) the Acts of the Parliament of England of general application which were in force in England at the date of Bermuda's settlement on 11th July 1612, subject to the provisions of any Acts of the Bermuda Legislature which have been passed since 1612 in any way altering, amending, or modifying the same. These three systems of law administered in Bermuda are also subject to Acts of the United Kingdom Parliament which have been passed since 1612 and made expressly applicable to Bermuda[3]. Section 18 of the Supreme Court Act 1905 further provides that law and equity are administered concurrently, and in any conflict the rules of equity should prevail.

**What is the court system and judicial structure in Bermuda?**

14. The Supreme Court of Bermuda is the first instance court in Bermuda with unlimited jurisdiction, and it determines all civil and commercial disputes with a value in excess of BD$25,000 (i.e. US$25,000). The primary legislation that establishes the Supreme Court in its modern form is the Supreme Court Act 1905 (read with the Constitution Order 1968), and the Court's procedural rules for the conduct of civil proceedings are principally contained in the Rules of the Supreme Court of Bermuda 1985 (as amended from time to time).

15. There is a designated division of the Supreme Court known as the Commercial Court, which determines a wide variety of commercial and business disputes (as defined in Order 72 of the Rules of the Supreme Court of Bermuda 1985). The

---

[2] The common law of England that was introduced to Bermuda upon its settlement in 1612 has not remained static, but has been subject to development since that date by the Bermuda courts, subject to the doctrine of precedent: see *Crockwell v Haley* [1993] Bda LR 7, Court of Appeal for Bermuda, per da Costa JA, P. Ag., at pages 3 to 5. See also section 4 of Bermuda's Interpretation Act 1951, which defines the common law to mean '*so much of the common law of England (disregarding any supersession, modification or variation as respects its operation or effect in England by reason of any enactment of the Parliament of the United Kingdom) as has effect for the time being in Bermuda*'.

[3] Colonial Laws Validity Act 1865, sections 1 to 3. It is worth noting that European Union law has no direct effect in Bermuda (since Bermuda is not a part of the European Union), save and to the limited extent that the United Kingdom has enacted any particular European Union law in the United Kingdom and then expressly extended such UK legislation to Bermuda (no such law being relevant for the purposes of this Declaration).

Commercial Court of the Supreme Court of Bermuda also determines any disputes relating to the affairs of companies incorporated in Bermuda under the Companies Act 1981 (including, for example, shareholder disputes and insolvency or bankruptcy proceedings).

16. The Commercial Court is currently made up of two full-time judges with experience of commercial and civil law: Chief Justice Narinder Hargun and Mrs. Justice Shade Subair Williams. In the event that these two full-time judges might have insufficient capacity to handle the various commercial cases pending before the Court, it is possible for the Governor of Bermuda to appoint additional judges on a part-time basis (whether as Acting Justices or Assistant Justices) and there are a number of commercial lawyers based in Bermuda that have practical experience of sitting as a judge on a part-time basis (and that willingly make themselves available to do so, when needed).

17. The Court of Appeal for Bermuda is the first-tier appellate court in Bermuda, made up of three senior judges who sit in quarterly sessions (generally every March, June, and November), and it entertains appeals from the Supreme Court of Bermuda. The judges of the Court of Appeal currently include judges that have sat as judges of the Court of Appeal for England and Wales; as judges of the Supreme Court of Bermuda; and as judges of the Grand Court of the Cayman Islands.

18. Appeals against decisions of the Court of Appeal for Bermuda are entertained by the Judicial Committee of the Privy Council, which, although based in the United Kingdom, is Bermuda's highest appellate court. The Privy Council is ordinarily made up of a five judge tribunal sitting in London. Its composition consists of senior members of the judiciary of the Supreme Court of the United Kingdom (formerly the House of Lords, and the highest appellate court for England and Wales, Scotland, and Northern Ireland), as well as other senior judges from Commonwealth jurisdictions.

## Is the common law principle of precedent applicable in Bermuda?

19. Bermuda law, following English law in this regard, is based upon the common law principle of precedent. Under the doctrine of precedent, certain judicial decisions are 'binding' on other judges, in that their essential reasoning or *'ratio decidendi'*[4] must be followed and applied, unless they are properly capable of being distinguished. In particular, a judge of the Supreme Court of Bermuda is bound to follow and apply any relevant decision of the Court of Appeal for Bermuda, and any relevant decision of the Privy Council. The Court of Appeal, in turn, is bound to follow and apply any relevant decision of the Privy Council. Previous relevant decisions of the Privy Council are binding on the Privy Council itself, except in exceptional circumstances. The Privy Council can depart from a previous decision, when, for example, the previous decision is thought to be wrong and impeding the proper development of the law or to have led to results which were unjust or contrary to public policy[5].

20. Under the doctrine of precedent, certain judicial decisions or parts of judicial decisions (such as *'obiter dicta'*, which are comments or findings that do not form part of the essential reasoning), may be treated as persuasive, and, depending on the facts of the case, the seniority and experience of the tribunal, and the quality of their reasoning, should ordinarily be followed and applied, unless they are plainly wrong, were not fully or properly argued or reasoned (or failed to take into account relevant authorities), or are properly capable of being distinguished. Accordingly, first instance decisions of the Supreme Court of Bermuda are persuasive on, and should generally be followed in subsequent cases by, the Supreme Court of Bermuda, deciding subsequent cases.

21. Furthermore, Bermudian courts often treat English case law as being persuasive, for two principal reasons (but subject to the circumstances of any particular case):

---

[4] The *'ratio decidendi'* of a case has been defined as any rule of law expressly or impliedly treated by the Court as a necessary step in reaching its conclusion, having regard to its reasoning.

[5] *Gibson v The United States of America* [2007] 1 WLR 2367, per Lord Brown at paragraph 22.

(1) Firstly, many Bermuda statutes are based upon current or former United Kingdom legislation. For example, in the corporate law context, Bermuda's Companies Act 1981 is largely based on the UK's Companies Act 1948[6], although there have been a number of provisions omitted, added and amended to meet Bermuda's unique circumstances, some of which have been modelled on statutory provisions from other common law jurisdictions[7] or which have been drafted specifically for Bermuda. As a result, decisions of the Superior Courts of England and Wales with respect to provisions of United Kingdom statute law which are identical to or similar to Bermudian statutory provisions are considered in Bermuda to be highly persuasive authority, and such decisions are in practice often followed[8].

(2) Secondly, the decisions of the Supreme Court of the United Kingdom (formerly the House of Lords) on matters of common law and statutory interpretation are extremely persuasive in Bermuda since the Supreme Court of the United Kingdom (formerly the House of Lords), sitting as the highest appellate Court for the United Kingdom, and the Privy Council,

---

[6] See, for example, *De Shaw Oculus Portfolios Inc v Orient Express Hotels Ltd* [2010] Bda LR 32, per Ground CJ, and note also his comments at paragraph 48: "*I think that the common law of Bermuda is the same as that of England in this regard, and remains unaffected by subsequent statutory interventions in that country*". By way of further illustration, in *The Minister of Finance v Hawkes (Trustee)* [1991] Bda LR 18, the Court of Appeal for Bermuda recognised that "*the source of section 236 of the Act of 1981 is section 319 of the Companies Act 1948 of the United Kingdom*", per Huggins JA at page 8 and Telford Georges JA at page 11. There are a number of other reported Bermuda judgments that have discussed the similarities (and occasional differences) between Bermuda's Companies Act 1981 and the UK's Companies Act 1948.

[7] By way of example, sections 104 to 109 of the Companies Act 1981, which are the statutory provisions relating to the amalgamation of companies, were modelled on Canadian legislation: see *Clark v Energia Global Ltd* [2002] Bda LR 39, per Meerabux J at pages 8 to 9.

[8] *Robins v National Trust Co Ltd* [1927] AC 515, PC, per Viscount Dunedin at 519; *Remington v Remington*, Civil Appeal No. 1 of 1977, Court of Appeal for Bermuda; and *Mutual Reinsurance Co. Ltd. v Peat Marwick Mitchell & Co.* [1997] 1 BCLC 1. Furthermore, the Bermuda courts are required, when interpreting or construing any Bermudian statutory provision, to apply as nearly as practicable the rules for the interpretation and construction of provisions of law for the time being binding upon the Supreme Court of Judicature in England: see section 10 of the Interpretation Act 1951. Where issues of common law or statutory interpretation in Bermuda have not been expressly considered by the Bermuda courts or by the English courts, the Bermuda courts may, in certain circumstances, find assistance in the consideration of such issues in reasoned judgments by judges of the superior courts of other common law jurisdictions. However, the persuasiveness of any such decisions will depend to a great extent on the specific facts and circumstances of each case (including the legislative background, the jurisdictional and legal similarities and differences, and the perceived quality of the tribunal and its reasoning).

sitting as the highest appellate Court for Bermuda, share common membership, in terms of the identities of the judges[9]. The Court of Appeal for Bermuda has held that, generally speaking, Bermuda Courts will accept decisions of the Supreme Court of the United Kingdom (formerly the House of Lords) as effectively binding in common law matters, unless there are circumstances in which the social and economic conditions of Bermuda justify a departure from English precedent[10].

22. I turn now to the questions which I have specifically been asked to consider and address.

**Whether under Bermuda law the "Law" section (§ 16) in the Employment Agreement or the "Governing Law; Venue" section in the Addendum are enforceable and would create exclusive jurisdiction in the Bermuda courts?**

### Jurisdiction under Bermuda law

23. As a starting point, the Bermuda Court has the jurisdiction to determine a wide variety of civil and commercial disputes between local and/or international litigants. The Bermuda Court's *in personam* jurisdiction can be established in a number of different ways (only some of which are dependent on the parties' agreement or voluntary submission to the jurisdiction of the Bermuda Court, and/or the Defendants' place of residence or place of incorporation). Under Bermuda law, however, there is a direct connection between the establishment of *in personam* jurisdiction over, and the ability to effect service on, particular Defendants (whether they are located within or outside the territorial boundaries of Bermuda).

24. If the claims being made in this particular Complaint by Fredricks were being pursued in Bermuda (or substantially similar claims that were properly particularised and supported by appropriate evidence under Bermuda's procedural rules), the

---

[9] See Lord Diplock's speech in *De Lasala v De Lasala* [1980] AC 546, Privy Council at 558.
[10] *Crockwell v Haley* [1993] Bda LR 7, Court of Appeal for Bermuda.

Bermuda Court's jurisdiction to determine such claims could, under Bermuda law but subject to the precise circumstances prevailing at the relevant point in time, be established on various grounds, including one or more of the following grounds (which are expressly recognised by Order 10 and/or Order 11 of the Rules of the Supreme Court of Bermuda 1985):

(1) Since Catco is incorporated and registered in, and maintains a registered office and business address in, Bermuda[11], Catco may be validly served by any Plaintiff (including Fredricks) with Bermuda Court documents at its registered office address in Bermuda (and also by certain other methods of service), with jurisdiction over any and all claims against Catco (including claims similar to those being alleged at Count I, Count II, Count III, Count V, Count VI, Count VII, and Count VIII) being established as a matter of right under Bermuda law;

(2) By way of example, Fredricks' claims against Catco at Count I, Count II, Count III, Count IV, Count V, Count VII, and Count VIII in this particular Complaint are brought (whether wholly or in part) to enforce a contract[12], or to recover damages or to obtain other relief in respect of the breach of a contract, being a contract which:

   i. Was made within the jurisdiction of Bermuda[13]; and/or

---

[11] I note that the Complaint itself recognizes, at paragraph 17, that Catco is "*a Bermuda exempted reinsurance investment company*" whose "*principal place of business is in Hamilton, Bermuda*".

[12] Fredricks' claims appear to seek to enforce two contracts governed by Bermuda law, being (a) the Employment Agreement and the Addendum, and (b) the Bye-Laws of Catco.

[13] The letter to Fredricks from Catco enclosing the Employment Agreement dated December 21, 2016, which I have reviewed for the purposes of this Declaration, bears Catco's Bermuda address at 141 Front Street, Hamilton HM 19, Bermuda, and it appears to contemplate that the signed "*Bermuda Employment Agreement*" would be returned by Fredricks to Catco in Bermuda. As a matter of Bermuda law, therefore, this would suggest that the Employment Agreement was "*made*" in Bermuda. The Bye-Laws were clearly "*made*" in Bermuda, being the Bye-Laws of a Bermuda company, which, on their face, disclose that they were "*prepared by*" lawyers in Bermuda.

ii. Is by its terms (and/or by necessary implication) governed by the law of Bermuda[14]; and/or

iii. Contains a term to the effect that the Bermuda Court shall have jurisdiction to hear and determine any action in respect of the contract[15];

(3) By way of further example, Fredricks' claims against Catco at Count I, Count II, Count III, Count IV, Count V, Count VII, and Count VIII in this particular Complaint are brought (whether wholly or in part) in respect of a breach of contract allegedly committed within the jurisdiction of Bermuda; and/or

(4) By way of further example, Fredricks' claims against Catco at Count IV, Count VI, and Count VII in this particular Complaint allege (if only in part) a tort (or torts) in which the damage was allegedly sustained, or resulted from acts allegedly committed, within the jurisdiction of Bermuda[16]; and

(5) Under the right circumstances and factual allegations, Markel could also be made a party to claims of the sort alleged in this particular Complaint.

---

[14] In this case, the Employment Agreement and the Addendum are both, by their express terms, governed by Bermuda law. They would also, in the absence of express terms to the contrary, be governed by Bermuda law as a matter of necessary implication, by virtue of the provisions of sections 2, 3, and 4 of Bermuda's Employment Act 2000, which applies to all employers based in Bermuda who employ employees that are employed wholly or mainly in Bermuda for remuneration under a contract of employment. In this case, a Bermuda Court would have no difficulty concluding that Bermuda law applies to the Employment Agreement and the Addendum even if this had not been stated in express terms, taking into account the Definitions at Clause 1.1 which make references to "*the Bermuda Monetary Authority*", Bermuda's "*Ministry of Finance*", and "*the Bermuda Department of Immigration*"; the reference at Clause 7.1 to "*Bermuda employees*"; the reference at Clause 10.1(a) to Bermuda's "*Road Traffic Act 1947*"; and the reference at Clause 18 to the Employee's relocation to Bermuda. So far as the Bye-Laws are concerned, these do not expressly state that they are governed by Bermuda law, but Bermuda law applies by necessary and obvious implication, given the facts that Catco is incorporated and registered as a Bermuda company, and the Bye-Laws cross-refer to Bermuda's Companies Act 1981: see, for example, *Lisa SA v Leamington Reinsurance Co Ltd* [2008] Bda LR 51.

[15] As is the case with Clause 16 of the Employment Agreement and the Addendum Clause.

[16] I note, for example, the allegation at paragraph 99 of the Complaint that "*Skadden appeared at the offices of Markel Catco **in Bermuda** in early December of 2018*".

25. Conversely, and for the avoidance of doubt, the Bermuda Court would have jurisdiction to determine claims by Catco against Fredricks (if any were to be asserted by Catco) relating to the Employment Agreement, the Addendum, the Bye-Laws, and/or the various statutory, fiduciary, equitable and common law obligations arising under Bermuda law associated with Fredricks' employment by Catco in Bermuda and/or Fredricks' appointment as a director of Catco (even in the absence of Fredricks' agreement or voluntary submission to the jurisdiction of the Bermuda courts).

26. The key point to note, therefore, is that the Bermuda Court would have jurisdiction to determine claims of the sort asserted in this particular Complaint by Fredricks for a number of different reasons (even if there were no contractual agreement that the Bermuda Court shall have jurisdiction). This point is significant, in my view, for two reasons:

(1) Firstly (and as discussed further below), there are Bermuda and English authorities that support the proposition that the Bermuda Court should seek to avoid the interpretation of a jurisdiction clause in a contract (such as the Employment Agreement and the Addendum) in a manner that would otherwise be redundant or otiose: if Bermuda Court jurisdiction already arises for other reasons in any event, the Bermuda Court may properly conclude that the parties must have intended to add something – i.e. exclusivity - by specifically including a Bermuda jurisdiction clause in their contract, especially if the jurisdiction clause uses verbs, adjectives or adverbs that are ordinarily associated with exclusivity or mandatory submission to jurisdiction[17]. To put matters another way, the authorities support the

---

[17] See, for example, *Re A Trust* [2012] SC Bda 72 Civ per Kawaley CJ at paragraphs 62 to 64: "*in my judgment the mandatory language of the clause ... and the combined selection of a Bermudian governing law and Bermudian forum clause ... does naturally suggest exclusivity ... the combination of a Bermuda governing law clause and a Bermuda forum clause points towards the draftsman's intent that the Courts of Bermuda should exclusively determine matters ...*" (even though that case was concerned with a jurisdiction provision in a trust deed rather than a contract). See also *British Aerospace v Dee Howard* [1993] 1 Lloyds Law Reports 368, per Waller LJ: "*In the instant case the parties have expressly agreed English law and there would be no need to expressly agree that the English court should have jurisdiction for the English court to have non-exclusive jurisdiction. **The English court would in any event have such***
(footnote continued)

14

proposition that, at common law, where parties to a commercial contract have made provision for Bermuda jurisdiction, the Bermuda Court should apply a presumption in favour of exclusivity (particularly if the Bermuda Court would have had jurisdiction even in the absence of the jurisdiction agreement)[18];

(2) Secondly, in the event that the Bermuda Court were to engage in its own analysis of the discretionary issue of '*forum non conveniens*' (i.e. in the event that proceedings were commenced by Fredricks in the Bermuda Court but the Defendants sought to argue that there was a foreign Court or forum that was much more appropriate than the Bermuda Court), the Bermuda Court would do so from the starting point that (a) the Bermuda Court had *in personam* jurisdiction for a number of different reasons (including but not limited to the presence of an exclusive jurisdiction clause), and that (b) the Bermuda Court is most likely to be the appropriate forum for the determination of Fredricks' various claims (even in the absence of an exclusive jurisdiction clause)[19].

**The wording and interpretation of Clause 16 and the Addendum Clause**

27. Against this background, I note that:

(1) Clause 16 of the Employment Agreement dated 21 December 2016 (as between Catco and Fredricks) contains the following express wording:

---

*jurisdiction, and by expressly agreeing to English jurisdiction they must be seeking to add something, i.e. that England should have exclusive jurisdiction.*"

[18] See, for example, *Sohio Supply Co v Gatoil USA Inc* [1989] 1 Lloyd's Rep 588 at 591-592, English Court of Appeal.

[19] See, for example, *Konamaneni v Rolls Royce* [2002] 1 WLR 1269 per Lawrence Collins J (as he then was) at paragraph 55: "*I consider that the correct approach would be to say that the courts of the place of incorporation are very likely indeed to be the appropriate forum, but not so overwhelmingly that they will necessarily be the exclusive forum. So understood Pergamon Press Ltd v Maxwell [1970] 1 WLR 1167 confirms that questions of internal management are governed by the law of the place of incorporation, and that the courts of that place are best suited to give decisions on the control and extent of the powers of the management*".

15

"*16. Law*

*This Agreement **shall be** governed by and construed in accordance with **Bermuda Law** and the parties **subject to the exclusive jurisdiction of the Bermuda Courts**".* (Clause 16)

(2) Schedule 2 to the Employment Agreement, as effected by amendment on or about 19 October 2018 through the Addendum (as between Catco and Fredricks), contains the following express wording:

"***Governing Law; Venue***

*This Addendum **shall be** governed by **Bermuda law** and **the parties agree to submit to the jurisdiction of the Supreme Court of Bermuda**".* (Addendum Clause)

28. Given the (relatively minor) differences in the express wording of these two clauses, it may be helpful to address, as a matter of Bermuda law:

(1) whether each clause is to be read (and interpreted) together or separately; and

(2) whether the meaning and effect of each clause is the same (or at least consistent with one another), or different (or inconsistent with one another).

29. Under Bermuda law (following English law), there is a well-established principle of contractual interpretation that requires that every contract is to be construed with reference to its object and the whole of its terms: i.e. the whole of the contractual wording must be considered in the process of interpretation, even though the immediate object of interpretation is the meaning of an isolated word or clause. There are a number of reported authorities that promote and support a 'uniform and consistent', or 'harmonious', approach to the interpretation of the various clauses within a single written contract (even if that written contract is contained in, or evidenced by, a variety of related documents). Additionally, in *Re Sigma Finance Corporation* [2009] UKSC 2, the United Kingdom Supreme Court has emphasised

16

the need, when looking at a series of related agreements, to construe one agreement (which was part of a series of related agreements) by taking into account the overall scheme of the agreements, and reading sentences and phrases in the context of that overall scheme. These principles have been expressly recognised and applied under Bermuda law in the case of *Kingate Global Fund Limited et al v Kingate Management Ltd et al* [2015] SC Bda 65 Com, per Hellman J at paragraphs 83 to 91.

30. In the circumstances, I am of the opinion that Clause 16 and the Addendum Clause would be interpreted and construed by a Bermuda Court, applying Bermuda law, together (rather than separately), and the meaning and effect of each clause would be interpreted in a manner that is the same, or at least substantially consistent, with one another.

31. This approach would not only be consistent with the authorities and principles referred to above, but it would also be consistent, in my view, with certain express terms of the Employment Agreement itself, including:

    (1) Clause 6.1 and Clause 11, which cross-refer to Schedule 2;

    (2) Clause 1.1, which makes clear in its first clause that the Definitions section applies both to the main body of the Employment Agreement as well as to the Schedules;

    (3) Clause 15.1, which makes clear that the Employment Agreement includes any Schedules referred to in the Employment Agreement; and

    (4) Clause 15.2, which makes clear that "*whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law*".

32. From a Bermuda law perspective, there would be no difficulty with the Bermuda Court taking the approach that I have explained above, since both clauses are clearly consistent with one another, in that they both expressly provide for Bermuda law as the governing law; and both clauses expressly provide for the Bermuda Courts to

have jurisdiction[20]. Even if they did not do so, it is generally to be assumed (absent express wording to the contrary) that just as parties to a single agreement do not intend as rational businessmen that disputes under the same agreement be determined by different tribunals, parties to an arrangement between them set out in multiple related agreements do not generally intend a dispute to be litigated in two different tribunals: see *Sebastian Holdings Inc v Deutsche Bank* [2011] 1 Lloyd's Rep 106 per Thomas LJ (as he then was) at paragraphs 39 to 42.

33. I am also of the opinion - in any event - that both Clause 16 and the Addendum Clause (whether interpreted together or separately) would be interpreted and construed by a Bermuda Court, applying Bermuda law, to be 'exclusive jurisdiction' agreements in favour of the Bermuda Courts.

34. In particular, in my opinion (and for the reasons set out in further detail below):

    (1) a Bermuda court would interpret Clause 16 to be an exclusive jurisdiction clause, whereby the parties have agreed to subject themselves, and any disputes between them relating to the Employment Agreement (including any of its Schedules and any Addendum), to the exclusive jurisdiction of the Bermuda Courts[21]; and

    (2) a Bermuda court would also interpret the Addendum Clause to be an exclusive jurisdiction clause (both when read in isolation and when read in the context of Clause 16), whereby the parties have agreed to subject themselves, and any disputes relating to Schedule 2 to the Employment

---

[20] The facts of this case, therefore, are far removed from the sorts of cases considered in *Satyam Computer Services Ltd v Upaid Systems Ltd* [2008] EWCA Civ 487, in which Courts have had to determine whether a particular dispute falls within one or other of multiple (differing) jurisdiction clauses in related agreements.

[21] The use of the phrase *"Bermuda Courts"* in this context is broad enough, in my view, to include a reference to the Supreme Court of Bermuda, Bermuda's Court of Appeal, the Privy Council, as well as the Employment Tribunal in Bermuda, which is a statutory tribunal established under section 35 of the Employment Act 2000, with jurisdiction to deal with certain employment-related claims on the initiative of employees (such as a claim for statutory unfair dismissal).

Agreement, as effected through the Addendum, to the exclusive jurisdiction of the Bermuda Courts.

35. In support of my opinion, I place weight on the following factors:

(1) The Bermuda Court's approach to the construction and interpretation of a jurisdiction clause should be 'broad and purposive': see *Sebastian Holdings Inc v Deutsche Bank* [2011] 1 Lloyd's Rep 106 per Thomas LJ (as he then was) at paragraphs 39 to 42. When interpreting any provision of a commercial contract, the Bermuda Court will look at the language and investigate the commercial consequences: see *Wood v Capita Insurance Services Ltd* [2017] UKSC 24; [2017] AC 1173 at [8]-[15] per Lord Hodge JSC.

(2) As a matter of Bermuda law, the express use of the word 'exclusive' is not necessary to confer exclusive jurisdiction[22]. Even though the presence of the word 'exclusive' is likely to be a significant factor in favour of an exclusive interpretation[23], the absence of the word 'exclusive' is not conclusive or particularly significant in and of itself[24]. The true question is whether on its proper construction and interpretation the clause obliges the parties to resort to the relevant jurisdiction on a mandatory or exclusive basis. In this case, of course, the parties have expressly used the words "*exclusive jurisdiction*" in Clause 16. It is reasonable to conclude that (absent express wording to the contrary, which simply does not exist here) the parties (and the draftsman) of

---

[22] See, for example, *Re A Trust* [2012] SC Bda 72 Civ per Kawaley CJ at paragraph 64: "… *the absence of the word 'exclusive' … did not matter*".

[23] See, for example, *AMT Futures Limited v Boural* [2018] EWHC 750 (Comm), per Richard Salter QC at paragraph 33: "*I begin with the words actually used by the parties in clause 33. These are in fairly standard form, and say that the jurisdiction of the English courts in relation to disputes falling within the scope of the clause is to be "exclusive". In my judgment, the use of that word would have been a clear indication to a reasonable person, having all the relevant and admissible background knowledge, that the parties intended that proceedings falling within the scope of the clause should take place only in the English courts, and that such proceedings should not take place elsewhere*".

[24] See, for example, the discussion in the English case of *Svendborg v Wansa* [1997] 2 Lloyd's Rep 183, per Staughton LJ: "*it can be argued that the author wished to provide for exclusive jurisdiction throughout, and did not think it necessary to repeat the word "exclusive" in the second part*".

the Addendum Clause did not intend to detract from the exclusive jurisdiction obligation expressly recognised by Clause 16 (but rather, they intended to reinforce the Bermuda Court's exclusive, and pre-existing, jurisdiction by the inclusion of the Addendum Clause, without considering it necessary to repeat the use of the word 'exclusive' in the Addendum Clause itself);

(3) The parties have expressly chosen Bermuda law on a mandatory (or imperative or directory) basis in both Clause 16 and the Addendum Clause ("*shall be governed by Bermuda law*") which is consistent with the Bermuda Courts having been granted exclusive jurisdiction. Indeed, the authorities recognise (and it is in any event obvious) that there is good legal and commercial sense in the parties (and the draftsman) making both Bermuda law mandatory and Bermuda jurisdiction mandatory. Whilst foreign Courts may apply Bermuda law if that is what the parties have agreed, the Bermuda Courts are the best forum for the application of the law of Bermuda[25];

(4) Whether the word "*subject*" in Clause 16 is treated as an adjective (with the implied insertion of words such as "*agree to be* subject"), or as a verb (with the implied insertion of words such as 'subject *their disputes'* or 'subject *themselves*')[26], the word 'subject' has connotations of legal obligation (rather than choice or option)[27];

---

[25] See the English Court of Appeal decision in *Hin-Pro International Logistics Limited v Compania Sud Americana de Vapores SA* [2015] EWCA Civ 401, per Clarke LJ at paragraph 66.

[26] I do not believe that a Bermuda Court would have any difficulty inserting or reading in words necessary to perfect the linguistic accuracy of the clause, taking into account the Bermuda Court decision in *Cape Ventures SAC Ltd v CC Private Equity Partners Ltd* [2009] Bda LR 54, per Kawaley J (as he then was) at paragraph 24: "*Such an approach would be consistent with the strong legal policy under Bermuda law in favour of enforcing exclusive jurisdiction clauses wherever it is reasonably possible to do so*".

[27] Although this is a matter of construction, I believe that a Bermuda Court would derive some support for this proposition from a number of authorities, including, for example, the English High Court decision in *Standard Bank Plc v Agrinvest International Inc* [2007] EWHC 2595 (Comm), per Teare J at paragraphs 21 and 22.

(5) The words "*agree to submit*" in the Addendum Clause also have connotations of legal obligation (rather than choice or option)[28];

(6) Since the Bermuda court would have had jurisdiction as of right in any event, this fact points in favour of both of Clause 16 and the Addendum Clause having been intended to confer exclusive jurisdiction (since otherwise the clauses would have been to some extent redundant, even if a non-exclusive jurisdiction clause might have had some value)[29];

(7) Whilst reported authorities in relation to different jurisdiction clauses in different contracts are at best a guide (since the results in other cases are of no binding force in relation to a different clause, and the question is one of construction and nothing more), the tenor of the English and Bermuda authorities is that an agreement to Bermuda law and Bermuda jurisdiction (or English law and English jurisdiction) in the form used in Clause 16 and the Addendum Clause (or in substantially similar form) are likely to be interpreted as involving both the mandatory application of Bermuda law and the exclusive jurisdiction of the Bermuda court: see, for example, *The Alexandros T* [2012] 1 Lloyd's Rep 162 and the authorities cited therein (at paragraphs 20 to 23), and *Hin-Pro International Logistics Limited v*

---

[28] I also believe that my analysis in this respect is supported by the English Court of Appeal decision in *Hin-Pro International Logistics Limited v Compania Sud Americana de Vapores SA* [2015] EWCA Civ 401, in which Clarke LJ noted at paragraphs 61 to 62, by reference to various authorities that: " *"it would be a surrender to formalism to require a jurisdiction clause to provide in express terms that the chosen Court is to be the exclusive forum"*. See also paragraphs 77 to 78. In passing, it may be of interest to note that Clarke LJ currently serves as the President of Bermuda's Court of Appeal.

[29] See the English Court of Appeal decision in *Hin-Pro International Logistics Limited v Compania Sud Americana de Vapores SA* [2015] EWCA Civ 401, per Clarke LJ at paragraphs 63 and 64: "*the natural commercial purpose of a clause such as the present is to stipulate (a) what law will govern; and (b) which court will be the court having jurisdiction over any dispute. If "shall be subject to" makes English law mandatory (as it does) the parties must, as it seems to me ... be taken to have intended (absent any convincing reason to the contrary) that the same should apply to English jurisdiction. I do not think that the reasonable commercial man would understand the purpose of the clause to be confined to a submission to English jurisdiction, if invoked, or to an underscoring of the convenience of litigation here ... it makes little commercial sense to add England as an optional additional court, but without any obligation on either party to litigate there; and there was every reason to think, as the judge did, that when the parties were agreed that claims and disputes should be determined by the English High Court, by necessary inference they were agreeing that they should not be determined elsewhere. That would make good commercial sense.*"

*Compania Sud Americana de Vapores SA* [2015] EWCA Civ 401, per Clarke LJ at paragraph 77, by way of example only.

### **The Bermuda Court's approach to the enforcement of exclusive jurisdiction clauses**

36. In matters of jurisdiction, Bermuda law (following English law) has always attached considerable importance to upholding and giving effect to exclusive jurisdiction clauses in accordance with their terms (whether express or implied).

37. Although the Bermuda Courts have recognised that there may be rare cases in which it would be wrong to give effect to an exclusive jurisdiction clause (if there are very 'strong reasons' not to do so), the Bermuda Courts will normally enforce such clauses, and they will, if necessary, grant an injunction to restrain one or other party from pursuing proceedings in contravention of the clause, or a stay of proceedings brought in breach of the clause.

38. Lord Bingham stated the position in *Donohue v Armco Inc.* [2001] UKHL 64, [2002] 1 Lloyd's Rep. 425 as follows:

> *"24. If contracting parties agree to give a particular court exclusive jurisdiction to rule on claims between those parties, and a claim falling within the scope of the agreement is made in proceedings in a forum other than that which the parties have agreed, the English court will ordinarily exercise its discretion (whether by granting a stay of proceedings in England, or by restraining the prosecution of proceedings in the non-contractual forum abroad, or by such other procedural order as is appropriate in the circumstances) to secure compliance with the contractual bargain, **unless the party suing in the non-contractual forum (the burden being on him) can show strong reasons for suing in that forum**. I use the word "ordinarily" to recognise that where an exercise of discretion is called for there can be no absolute or inflexible rule governing that exercise, and also that a party may lose his claim to equitable relief by dilatoriness or other unconscionable conduct. **But the general rule is clear: where parties have bound themselves**

22

*by an exclusive jurisdiction clause effect should ordinarily be given to that obligation in the absence of strong reasons for departing from it. Whether a party can show strong reasons, sufficient to displace the other party's prima facie entitlement to enforce the contractual bargain, will depend on all the facts and circumstances of the particular case....*

*25. Where the dispute is between two contracting parties, A and B, and A sues B in a non-contractual forum, and A's claims fall within the scope of the exclusive jurisdiction clause in their contract, and the interests of other parties are not involved, effect will in all probability be given to the clause ..."*

39. Lord Bingham suggested at paragraph 27 that – subject to the facts and circumstances of any particular case – the sorts of reasons that might justify the non-enforcement of an exclusive jurisdiction clause include cases where:

(1) The interests of other parties not bound by the exclusive jurisdiction clause are involved; or

(2) Where there was a dispute between the parties that arose outside of the relevant agreement and which was not within the scope of the exclusive jurisdiction agreement, and which would be litigated in a different forum in any event.

40. In subsequent cases, however, the Bermuda courts (following English law) have held that the starting position is that the parties will be held to their contractual choice of exclusive jurisdiction *"unless there are overwhelming, or at least very strong, reasons for departing from this rule"* and such reasons do not include *"factors of convenience that were foreseeable at the time that the contract was entered into other than in exceptional circumstances where the interests of justice are engaged"*. See, in particular:

(1) *Cape Ventures SAC Ltd v CC Private Equity Partners Ltd* [2009] Bda LR 54, per Kawaley J (as he then was) at paragraphs 16 and 17: "***All other things being equal, it seems to me that this Court, when faced with a challenge to the validity of an exclusive jurisdiction clause, should err on the side of supporting its efficacy***".

(2) *Athene Holding Ltd v Siddiqui et al* [2019] SC (Bda) 3 Com, per Hargun CJ at paragraph 90: "*As held by Gloster J (as she then was) in Antec International Ltd v Biosafety USA Inc [2006] EWHC 47 at {7}: **"the general rule is that the parties will be held to their contractual choice of English jurisdiction unless there are overwhelming, or at least very strong, reasons for departing from this rule". Whilst the court retains discretion in an exceptional case not to give effect to an exclusive jurisdiction clause, that discretion is only to be exercised in extremely limited exceptional circumstances which could not have been foreseen.** In particular, it is not permissible to engage in the conventional forum non conveniens analysis by reliance upon factors such as governing law, location of witnesses and documents and the like*".

41. On the basis of the documents that I have reviewed for the purposes of this Declaration, I have no reason to doubt that the Bermuda Court would enforce the exclusive jurisdiction clauses at Clause 16 of the Employment Agreement and/or the Addendum Clause in accordance with their express and implied terms, as a matter of Bermuda law.

**Whether under Bermuda law the "Law" section (§ 16) in the Employment Agreement or the "Governing Law; Venue" section in the Addendum would encompass any or all claims pled in the Plaintiff's Complaint?**

42. Consistently with the authorities and reasoning set out above, the scope of any jurisdiction clause is also a matter of construction and interpretation. In light of the United Kingdom House of Lords' decision in *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40, however, the proper approach as a matter of Bermuda

law is to treat the parties as rational commercial actors who would ordinarily have no reason to prescribe jurisdiction over some parts (but not other parts) of a potential claim or dispute between them. That case established (per Lord Hope at paragraph 26) "*the golden rule that if the parties wish to have issues as to the validity of their contract decided by one tribunal and issues as to its meaning or performance decided by another, they must say so expressly. Otherwise they will be taken to have agreed on a single tribunal for the resolution of all such disputes*".

43. The English Courts have confirmed that the reasoning of *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40 is equally applicable to exclusive jurisdiction agreements as to arbitration agreements: see, for example, *AMT Futures Limited v Boural* [2018] EWHC 750 (Comm) and *Starlight Shipping Co v Allianz Marine & Aviation Versicherungs AG & Ors (The 'Alexandros T')* [2014] EWCA Civ 1010, per Longmore LJ at paragraph 8.

44. In other words, a 'broad and purposive approach' must be followed in construing the scope of an exclusive jurisdiction clause: see *Sebastian Holdings Inc v Deutsche Bank* [2011] 1 Lloyd's Rep 106 per Thomas LJ (as he then was) at paragraphs 39 to 42.

45. I am of the opinion that, applying a broad and purposive approach, the proper meaning and effect of Clause 16 and the Addendum Clause (as a matter of Bermuda law) is that any and all disputes *relating to* the Employment Agreement (and/or the Addendum) are subject to Bermuda law and the exclusive jurisdiction of the Bermuda Courts.

46. Although the words "*relating to*" are not used in express terms in the clauses themselves, I believe that a Bermuda Court would conclude that they are necessarily implied on a broad and purposive basis, in light of *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40 and the other authorities cited above[30].

---

[30] "*Relating to*", for present purposes, can be used interchangeably with "*arising under*" or "*arising out of*" or "*connected to*", all of which phrases would be given precisely the same broad meaning and scope by the Bermuda (footnote continued)

47. As I have indicated above, I do not believe that a Bermuda Court would have any difficulty inserting, or reading in, words necessary to perfect the linguistic accuracy of the clause, taking into account the Bermuda Court decision in *Cape Ventures SAC Ltd v CC Private Equity Partners Ltd* [2009] Bda LR 54, per Kawaley J (as he then was) at paragraph 24: "*Such an approach would be consistent with the strong legal policy under Bermuda law in favour of enforcing exclusive jurisdiction clauses wherever it is reasonably possible to do so*".

48. I would further point out that "*relating to*" is an expression or concept that is properly given a broad interpretation, including extending to claims in tort, restitution, or other extra-contractual claims that are connected with, parallel to, or analogous to a claim in contract, or which arise from the same facts as a claim in contract. I derive support for this proposition from the following authorities (by way of example only):

    (1) In *The Angelic Grace* [1995] 1 Lloyds Rep 87, the English Court of Appeal held, per Leggatt LJ at 89, that a claim in tort with a "*sufficiently close connection*" to a claim in contract would fall within the scope of an arbitration agreement. In order to demonstrate a "*sufficiently close connection*", Leggatt LJ held that a party must "***show that the resolution of the contractual issue is necessary for a decision on the tortious claim, or that the contractual and tortious disputes are so closely knitted together on the facts that an agreement to arbitrate on one can properly be construed as covering the other***";

    (2) Although decided in a different context, the English Court of Appeal decision in *Alfa-Laval Tumba AB v Separator Spares International Ltd* [2012] EWCA

---

Court (absent express words to the contrary which do not exist in this case). In the words of Lord Hoffman in *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40 at paragraphs 12 to 14: "***the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen, are likely to have intended any dispute arising out of the relationship into which they have entered … to be decided by the same tribunal. The clause should be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction***".

Civ 1569 further demonstrates that a dispute may *"relate to"* a contract of employment even though the claim itself sounds in tort or is otherwise *"extra-contractual"* in nature;

(3) More recently, the English High Court decision in *Microsoft Mobile OY Ltd v Sony Europe Ltd* [2017] EWHC 374 (Ch) further demonstrates (at paragraphs 67 to 73) that *"parallel"* or *"analogous"* claims in tort arising from the same facts as a potential claim for breach of contract are likely to be treated as falling within the scope of an exclusive jurisdiction or arbitration agreement.

49. Having reviewed the Complaint in this case (and on the assumption that a similar set of claims were to be made by Fredricks in Bermuda Court proceedings in accordance with Bermuda's rules of procedure, pleading and evidence), I am of the opinion that a Bermuda Court would conclude that all of the claims of the sort asserted in Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, and Count IX in the Complaint (when such claims are properly characterized from a Bermuda law perspective) relate to (or are sufficiently closely connected with, or arise out of, or arise under) Fredricks' claims for breach of the Employment Agreement and/or the Addendum, and they all arise from the same facts (or substantially the same facts) as a claim for breach of the Employment Agreement and/or the Addendum (as paragraphs 76, 89, 96, 104, 110, 116, 128, 142, and 154 of the Complaint make plain). In particular, I am of the opinion that:

(1) **Count I: Breach of Contract**. The claim for breach of contract, properly characterised under Bermuda law, falls within the scope of the exclusive jurisdiction clauses. This claim relies in substance on alleged breaches of the Employment Agreement and the Addendum, given its reliance on allegations of Catco *"wrongfully terminating the Plaintiff's employment"* without cause, which are allegations that can only be made (or resolved) by an analysis and application of clauses such as clauses 2, 3, 6, 8, 10, and 11 of the

Employment Agreement, as well as clauses contained within the Addendum[31];

(2) **<u>Count II: Wrongful Dismissal / Violation of Addendum</u>**. As above, the claim for wrongful dismissal and violation of the Addendum, properly characterised under Bermuda law, falls within the scope of the exclusive jurisdiction clauses. This claim relies in substance on alleged breaches of the Employment Agreement and the Addendum, given its reliance on allegations of Catco "*wrongfully terminating the Plaintiff's employment*" without cause, which are allegations that can only be made (or resolved) by an analysis and application of clauses such as clauses 2, 3, 6, 8, 10, and 11 of the Employment Agreement, as well as clauses contained within the Addendum;

(3) **<u>Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>**. Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since it is clear that this claim relies in substance on alleged breaches of the Employment Agreement and the Addendum;

(4) **<u>Count IV: Intentional Interference with Contractual Relations.</u>** Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since it is clear that this claim relies in substance on alleged breaches of the Employment Agreement and the Addendum[32];

(5) **<u>Count V: Unjust Enrichment</u>**. Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since it

---

[31] See, for example, paragraphs 1 to 3 of the Complaint, including the express reference to the Plaintiff signing "*various employment-related agreements ... the last of which was Addendum to Employment Agreement*", and paragraphs 10 and 11 of the Complaint, describing the alleged circumstances relating to "*the termination of Plaintiff's employment*".

[32] See, for example, paragraphs 106 to 108 of the Complaint: "*Plaintiff performed her obligations ... in every material respect... Markel acted intentionally ... to cause Markel Catco to (a) breach its contractual obligations ... (b) wrongfully terminate her employment*".

is clear that this claim relies in substance on alleged breaches of the Employment Agreement and the Addendum[33];

(6) **Count VI: Defamation**. Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since it is clear that this claim relies in substance on alleged breaches of the Employment Agreement and the Addendum (and facts that are closely connected with such alleged breaches)[34];

(7) **Count VII: Invasion of Privacy**. Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since it is clear that this claim relies in substance on alleged breaches of the Employment Agreement and the Addendum (and facts that are closely connected with such alleged breaches)[35];

(8) **Count VIII: Obligation to Indemnify**. Properly characterised under Bermuda law, this claim falls within the scope of the exclusive jurisdiction clauses, since the Plaintiff alleges that this claim is closely connected with the alleged breaches (and termination) of the Employment Agreement and the Addendum[36]; and

(9) **Count IX: Deceptive and Unfair Acts and Unfair Methods of Competition in the Conduct of Trade or Commerce (Markel).** There would be a variety of economic torts recognised by Bermuda law that might be said to overlap with the allegations included within this Count and which,

---

[33] See, for example, paragraph 114 of the Complaint: "… *misconduct culminating in the wrongful dismissal of Plaintiff…*".

[34] See, for example, paragraphs 119 and 120 of the Complaint: " *… oral statements to third parties … that Plaintiff … [was] terminated because [she] breached [her] … employment agreement[..]… Defendants' press release and oral statements regarding Plaintiff's dismissal were false…*"

[35] See, for example, paragraph 135 of the Complaint: " *… her personal information was accessed without authorization and used as an unlawful basis to terminate her employment…*"

[36] See, for example, paragraph 30 of the Complaint, which alleges that "*Plaintiff became a director of Markel Catco in or about the Spring of 2017 and was formally appointed as Chief Executive Officer – Bermuda in November 2017…*" and paragraph 144 of the Complaint, which alleges that "*Plaintiff was a director of Markel Catco beginning in the Spring of 2017 and continuing through her termination on January 18, 2019*".

properly characterised in substance under Bermuda law, rely in substance on alleged breaches of the Employment Agreement and the Addendum (and facts that are closely connected with such alleged breaches)[37].

**Whether, if either clause is enforceable, the Bermuda courts would provide an adequate forum for the claims pled in the Complaint, including with such considerations as (i) whether the Defendants named in the Plaintiff's Complaint could be amenable to process in Bermuda; (ii) whether Bermuda courts permit litigation of the same subject matter alleged in the Plaintiff's Complaint; and (iii) the timing by which a Bermuda court may resolve any action brought by the Plaintiff in such court?** <u>**Are the Defendants named in the Complaint amenable to process in Bermuda?**</u>

50. Yes, as I have discussed above:

    (1) Catco can be served with Bermuda Court process as of right, given the facts of its incorporation and registration, registered office, and place of business in Bermuda;

    (2) Markel can voluntarily submit to the jurisdiction of the Bermuda Court and Markel can voluntarily provide an address for service in Bermuda (whether through attorneys or otherwise). Even if Markel did not agree to submit to the Bermuda Court's jurisdiction voluntarily, then, as I have explained above, it would be possible for Fredricks to seek to persuade the Bermuda Court to accept jurisdiction over Markel with respect to claims of the sort alleged in this particular Complaint (if such allegations were properly particularised and supported by appropriate evidence in any proceedings commenced in Bermuda).

---

[37] See, for example, paragraphs 156 and 157 of the Complaint: "… *unfair acts during her employment … wrongfully dismissing Plaintiff … unfair acts after her wrongful dismissal…*", as well as paragraph 158 of the Complaint: "… *denying her contractual benefits*".

**Do the Bermuda Courts permit litigation of the same subject matter as is alleged in the Complaint?**

51. In general terms, the Bermuda Courts will permit litigation of the same (or substantially the same) subject matter as is alleged in the Complaint, despite certain differences between the Bermuda legal system and the US legal system. It may be helpful, in this context, to summarise my understanding of each of the Counts currently alleged in the Complaint, and for me to identify (in summary form only) the equivalent causes of action available under Bermuda law:

(1) **Count I: Breach of Contract**. The Bermuda Court would permit Fredricks to make a claim for breach of the Employment Agreement and the Addendum;

(2) **Count II: Wrongful Dismissal / Violation of Addendum**. As above, the Bermuda Court would permit Fredricks to make a claim for wrongful dismissal and/or breach (or violation) of the Employment Agreement and the Addendum;

(3) **Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing**. The Bermuda Court would recognise an analogous implied contractual duty of mutual trust and confidence in every employment contract governed by Bermuda law, following *Malik v Bank of Credit & Commerce International* [1998] AC 20;

(4) **Count IV: Intentional Interference with Contractual Relations.** The Bermuda Court would recognise an analogous economic tort under Bermuda law, namely procuring or inducing a breach of contract (and/or the tort of conspiracy);

(5) **Count V: Unjust Enrichment**. The Bermuda Court recognises, in principle, doctrines of 'unjust enrichment' or 'restitution' under Bermuda law, as well as the alternative possibility of awarding damages for certain breaches of

contract or equitable obligations on a basis that is not purely compensatory but which results in an account of profits made by the wrongdoer;

(6) **Count VI: Defamation**. The Bermuda Court recognises the torts of libel and slander (both of which amount to defamation) as well as the tort of malicious falsehood under Bermuda law;

(7) **Count VII: Invasion of Privacy**. The Bermuda Court recognises a variety of torts, equitable obligations, and statutory obligations under Bermuda law relating to personal privacy and the misuse of private or confidential information;

(8) **Count VIII: Obligation to Indemnify**. The Bermuda Court recognises the availability of contractual or equitable claims under Bermuda law[38] by directors and officers of a Bermuda company to be indemnified by such Bermuda company pursuant to the Bye-Law indemnity provisions.

(9) **Count IX: Deceptive and Unfair Acts and Unfair Methods of Competition in the Conduct of Trade or Commerce (Markel).** There would be a variety of economic torts recognised by Bermuda law that might be said to overlap with the allegations included within this Count.

(10) **Remedies**: All of the remedies sought in the Complaint are available under Bermuda law, save only for the claim for "*treble damages*". In the alternative to a claim for "*treble damages*", however, a Bermuda Court can, in certain circumstances make awards for punitive or exemplary damages.

---

[38] I note that the Complaint alleges at paragraphs 144 and 145 that Fredricks was "*a director of Markel Catco beginning in the Spring of 2017 and continuing through her termination on January 18, 2019*", and that she held executive office as "*Chief Risk Officer and then as CEO – Bermuda*". In this context, it is worth noting that Bermuda law, following English law, imposes statutory and equitable duties on directors of Bermuda companies that are governed by Bermuda law (unless expressly modified by agreement), and Bermuda law also recognizes the principle that the law of the place of incorporation applies to matters of substantive company law: see, for example, *Base Metal Trading Ltd v Shamurin* [2005] 1 WLR 1157, per Tuckey LJ at paragraph 56: "*A director's duties to his company are inextricably bound up with these matters and must therefore be governed by the place of the company's incorporation. Any other result would create huge uncertainty and hamper the requirement for good corporate governance and proper regulatory control*" and per Arden LJ at paragraph 69: "*the law of the place of incorporation applies to the duties inherent in the office of director*".

**What is the timing by which a Bermuda Court may resolve any action brought by a Plaintiff in the Bermuda Courts?**

52. The timing of the resolution of every case brought before the Bermuda Courts is different. Although the rules of Court contemplate certain specific deadlines for the exchange of pleadings and the making of certain applications in the early stages of a case, the timetable of any particular case is fixed, for the most part, by Orders made by the Court after hearing representations from the parties.

53. The Court does have a duty, however, to manage cases actively, and to ensure that cases are dealt with expeditiously and fairly (consistently with the Constitutional right to a fair hearing before an independent and impartial Court or tribunal within a reasonable period of time).

54. The Court's powers of case management are wide-ranging, but they include the powers to grant default or summary judgment in certain cases; to strike out pleadings in certain cases; to abridge or extend time; to grant interim relief; to encourage alternative dispute resolution; and to supervise discovery of documents, the exchange of witness evidence, and the admission of expert opinion evidence.

55. The Supreme Court of Bermuda has also published guidance to the effect that all Judges should give reasoned rulings within 6 weeks of the conclusion of any hearing (if the ruling is not delivered immediately on an *ex tempore* basis), and this guidance is largely adhered to by the Commercial Court judges.

56. In practice, therefore, this means that a substantial piece of civil litigation in Bermuda could be expected to be resolved (at first instance) in a period between six months and two years after commencement of proceedings, even though there are some reported (and unreported) examples of cases having been resolved more quickly or more slowly in practice.

57. With a view to illustrating the timing of Bermuda court cases (by particular reference to employment contract or related disputes), I can draw the Court's attention to the following examples:

(1) I have recently acted as Counsel in two unreported (and unrelated) executive employment contract disputes before the Supreme Court of Bermuda, both of which settled (on confidential terms) within about six months of their commencement, after pleadings had been exchanged and after a strike-out application (similar to a motion to dismiss summarily) had been made by the Defendant in each case, and heard by the Bermuda Court in each case;

(2) In the employment contract case of *David Dumont v Bermuda College* [2018] Bda LR 4, Hellman J of the Supreme Court of Bermuda gave final judgment (at first instance, after trial) on 17 January 2018, 7 months after the proceedings were effectively commenced by the Plaintiff on 27 June 2017;

(3) In the employment contract case of *David Lee Tucker v Hamilton Properties Limited* [2017] Bda LR 136, Registrar Subair Williams (as she then was) gave judgment on a strike-out application on 11 December 2017, 11 months after the proceedings were effectively commenced by the Plaintiff on 26 January 2017;

(4) In the employment contract case of *Whiting v Torus Insurance (Bermuda) Ltd.* [2015] Bda LR 17, Kawaley CJ gave final judgment (at first instance, after trial) on 6 March 2015, about 10 months after the proceedings were effectively commenced by the Plaintiff on 19 May 2014.

58. Against this background, I am of the opinion that, from a Bermuda law perspective, the Bermuda Courts would provide an adequate forum for the claims contained in the Complaint (or substantially similar claims if such claims were properly particularised and supported by appropriate evidence in any proceedings commenced in Bermuda).

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

_Alexander James Kenneth Potts QC_

**Alexander James Kenneth Potts QC**

29 April 2019
Hamilton.
Bermuda.

## LIST OF AUTHORITIES CITED

1. Section 15 of the Supreme Court Act 1905
2. Section 4 of the Interpretation Act 1951
3. Colonial Laws Validity Act 1865
4. RSC Order 10
5. RSC Order 11
6. RSC Order 72
7. *Alfa-Laval Tumba AB v Separator Spares International Ltd* [2012] EWCA Civ 1569
8. *AMT Futures Limited v Boural* [2018] EWHC 750 (Comm)
9. *Athene Holding Ltd v Siddiqui et al* [2019] SC (Bda) 3 Com
10. *Base Metal Trading Ltd v Shamurin* [2005] 1 WLR 1157
11. *British Aerospace v Dee Howard* [1993] 1 Lloyds Law Reports 368
12. *Cape Ventures SAC Ltd v CC Private Equity Partners Ltd* [2009] Bda LR 54
13. *Clark v Energia Global Ltd* [2002] Bda LR 39
14. *Crockwell v Haley* [1993] Bda LR 7
15. *David Dumont v Bermuda College* [2018] Bda LR 4
16. *David Lee Tucker v Hamilton Properties Limited* [2017] Bda LR 136
17. *De Lasala v De Lasala* [1980] AC 546
18. *De Shaw Oculus Portfolios Inc v Orient Express Hotels Ltd* [2010] Bda LR 32
19. *Distillers Co (Biochemicals) Ltd v Thompson* [1971] AC 458
20. *Donohue v Armco Inc.* [2001] UKHL 64, [2002] 1 Lloyd's Rep. 425
21. *Fiona Trust & Holding Corp v Privalov* [2007] UKHL 40
22. *Gibson v The United States of America* [2007] 1 WLR 2367
23. *Hin-Pro International Logistics Limited v Compania Sud Americana de Vapores SA* [2015] EWCA Civ 401
24. *Kingate Global Fund Limited et al v Kingate Management Ltd et al* [2015] SC Bda 65 Com
25. *Konamaneni v Rolls Royce* [2002] 1 WLR 1269
26. *Lisa SA v Leamington Reinsurance Co Ltd* [2008] Bda LR 51
27. *Malik v Bank of Credit & Commerce International* [1998] AC 20
28. *Metall and Rohstoff AG v Donaldson Lufkin & Jenrette Ince* [1990] 1 QB 391

29. *Microsoft Mobile OY Ltd v Sony Europe Ltd* [2017] EWHC 374 (Ch)

30. *Mutual Reinsurance Co. Ltd. v Peat Marwick Mitchell & Co.* [1997] 1 BCLC 1

31. *Re A Trust* [2012] SC Bda 72 Civ

32. *Re Sigma Finance Corporation* [2009] UKSC 2

33. *Remington v Remington*, Civil Appeal No. 1 of 1977, Court of Appeal for Bermuda

34. *Robins v National Trust Co Ltd* [1927] AC 515, PC

35. *Satyam Computer Services Ltd v Upaid Systems Ltd* [2008] EWCA Civ 487

36. *Sebastian Holdings Inc v Deutsche Bank* [2011] 1 Lloyd's Rep 106

37. *Sohio Supply Co v Gatoil USA Inc* [1989] 1 Lloyd's Rep 588

38. *Standard Bank Plc v Agrinvest International Inc* [2007] EWHC 2595 (Comm)

39. *The Alexandros T* [2012] 1 Lloyd's Rep 162

40. *Starlight Shipping Co v Allianz Marine & Aviation Versicherungs AG & Ors (The 'Alexandros T')* [2014] EWCA Civ 1010

41. *Svendborg v Wansa* [1997] 2 Lloyd's Rep 183

42. *The Angelic Grace* [1995] 1 Lloyds Rep 87

43. *The Minister of Finance v Hawkes (Trustee)* [1991] Bda LR 18

44. *Whiting v Torus Insurance (Bermuda) Ltd.* [2015] Bda LR 17

45. *Wood v Capita Insurance Services Ltd* [2017] UKSC 24; [2017] AC 1173